2008 ME 26

**Matthew L. MORGAN**

v.

**John KOOISTRA et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 6, 2007.

Decided: Feb. 5, 2008.

Mark E. Dunlap, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, ME, for John Kooistra, Terry Walsh and the City of Portland.

Jodi L. Nofsinger, Esq. (orally), Robert H. Furbish, Esq., Berman & Simmons, Lewiston, ME, for Matthew Morgan.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] John Kooistra and Terry Walsh appeal the denial of their motions for summary judgment by the Superior Court (Cumberland County, *Cole, J.*) on Matthew L. Morgan's complaint for defamation. Kooistra and Walsh argue that: (1) they each are entitled to discretionary function immunity pursuant to the Maine Tort Claims Act (the MTCA), 14 M.R.S. § 8111(1)(C) (2007); (2) they each qualify for intentional act immunity pursuant to the MTCA, 14 M.R.S. § 8111(1)(E) (2007); (3) their statements were true; and (4) the Workers' Compensation Act's exclusivity provision, 39–A M.R.S. §§ 104, 408 (2007), bars recovery by Morgan.[1] Additionally, both assert that any liability is limited to $10,000 pursuant to the MTCA, 14 M.R.S. § 8104–D (2007). Kooistra also argues that he was not negligent in publishing the statements and Walsh argues that (1) his statements were not defamatory, and (2) his statements were conditionally privileged.

[¶ 2] We affirm the order denying Kooistra's motion for summary judgment. Because Walsh's statements were conditionally privileged, we vacate the order

---

1. Because neither Morgan nor Walsh briefed this issue, it is not preserved for appellate review. *See Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290, 293.

denying Walsh's motion for summary judgment and remand for entry of a summary judgment in his favor.

## I. CASE HISTORY

### A. Kooistra

[¶ 3] Kooistra has been a City of Portland paramedic/firefighter for sixteen years. In October or November 2002, Kooistra's then-girlfriend, a flight attendant, became intoxicated at a bar in Portland. Morgan, also a City paramedic/firefighter at the time, was at the same bar and offered to drive her home. Upon returning to her apartment, the flight attendant alleges that Morgan came in, they "hung out" drinking and listening to music, and eventually began to kiss. Kooistra learned about this and the three met to discuss what occurred. At that meeting, Kooistra's girlfriend asserted she and Morgan had engaged in a sexual act, and Morgan said that nothing happened. She accused Morgan of lying and Kooistra believed that Morgan was lying.

[¶ 4] In September 2002, while at a bar in Portland, Kooistra met, by chance, a financial advisor with whom he had become friendly. Kooistra introduced her to Morgan. During the evening she became extremely intoxicated. Kooistra asked Morgan to ensure that she returned home safely. According to the financial advisor, Morgan took her home and had unprotected sex with her. When Kooistra spoke to her the next day, she was extremely upset and told Kooistra that Morgan took advantage of her being intoxicated. She did not wish to file charges because she was embarrassed and humiliated. Although she did not use the word rape, she did say she felt violated. Morgan initially denied meeting her; subsequently he recalled meeting her, but continued to deny taking her home or having sex with her.

[¶ 5] After learning of these incidents, Kooistra informed another City paramedic/firefighter, who was romantically involved with Morgan, that Morgan had forced himself on the financial advisor and had the encounter with the flight attendant, saying Morgan made the flight attendant feel threatened and made sexual advances that "came short of rap[e]." Kooistra also told the City firefighter/paramedic that Morgan might have been inappropriate with other women.

[¶ 6] Kooistra also called the wife of Morgan's former police department partner and told her that Morgan had taken advantage of an intoxicated friend. Kooistra also told her that Morgan took advantage of Kooistra's girlfriend while she was intoxicated.

[¶ 7] During the course of their dating relationship, Kooistra informed the flight attendant that Morgan was inappropriate with other women. She got the impression that Morgan had forced himself on another woman or raped her, but does not recall Kooistra's exact statements.

### B. Walsh

[¶ 8] Walsh is a deputy chief of the Portland Fire Department. He is a person to whom people in the Department can bring complaints. Walsh alleges that after attending a meeting with Regional Emergency Medical Information System personnel, two female employees of Maine Medical Center approached him to complain about body language and facial gestures that Morgan used. Walsh claims these individuals did not wish to pursue a formal complaint and asked that their names not be revealed. As a result, Walsh took no further action and did not learn their names. Morgan denies these allegations.

[¶ 9] In February 2004, a City paramedic/firefighter told Walsh that she did not want to work with Morgan because he

made her uncomfortable. She told Walsh that during a benefit bicycle ride Morgan made a comment about her appearance that upset her. Additionally, she said Morgan gave her "elevator eyes," looking her up and down. There is some confusion as to whether she was fearful for her safety. In her deposition she stated that she feared that if left alone, Morgan would try to touch her, but she also stated that she did not think Morgan would assault her.

[¶ 10] During this conversation, the firefighter/paramedic alleges that Walsh informed her that others had complained about Morgan's behavior. She believed the complaints were similar to hers, but admits she was not told what they concerned.

[¶ 11] Because Walsh had not received similar complaints before, he notified Fire Chief LaMontagne. They contacted the City human resources (HR) director. The HR director instructed Walsh to begin an investigation into the complaint. Walsh told the Firefighter's Union vice president that there had been a "sexual harassment-type" complaint filed against Morgan.

[¶ 12] As part of Walsh's investigation, he spoke with Morgan's field trainer, who informed Walsh of two incidents that concerned him. Walsh also spoke with a City firefighter paramedic who had concerns regarding Morgan's patient care. After the investigation Walsh provided a written statement to Chief LaMontagne detailing his findings. Morgan alleges this report falsely classified the complaint as a "sexual harassment" complaint. Although the original complainant did not use the words "sexual harassment," she did say she believed that Morgan's behavior had sexual innuendos and that Morgan was undressing her with his eyes. Morgan also alleges that Walsh's report incorrectly stated that

the complainant had objected to body gestures and that she feared for her safety.

[¶ 13] LaMontagne issued a verbal reprimand to Morgan, and a letter regarding the reprimand was placed in Morgan's file for ninety days. As a result, the Union filed a grievance, on Morgan's behalf, regarding the manner in which the sexual harassment policy was administered. A meeting was held at which Morgan, the Firefighter's Union vice president, Fire Chief LaMontagne, and Walsh were present. The Union then appealed the grievance to the HR director, who held a hearing in July 2004. At the hearing Walsh stated that he personally saw Morgan give another female firefighter/paramedic "elevator eyes." Morgan denied this. The HR director upheld the reprimand. Morgan subsequently appealed the grievance to the city manager, who denied the grievance, and then to an arbitrator, who affirmed the City's decision.

[¶ 14] Morgan asserts that Walsh's statement to the original complainant that others had complained about Morgan was defamatory, and that in the course of Walsh's investigation into this complaint, Walsh made several defamatory statements in his report to Fire Chief LaMontagne. Additionally, Morgan asserts that during the grievance hearing Walsh made defamatory statements.

[¶ 15] Morgan filed a complaint in the Superior Court in February 2006, alleging defamation against Kooistra and the City, tortious interference with contractual or other advantageous economic relations against Kooistra and the City, punitive damages against Kooistra and the City, defamation against Walsh and the City, and punitive damages against Walsh and the City. Kooistra, Walsh, and the City filed an answer with several affirmative defenses, including the defense that Morgan's claims were barred by the MTCA,

truth, and immunity pursuant to the MTCA. All defendants subsequently moved for summary judgment and to strike Morgan's affidavit.

[¶ 16] The Superior Court denied the motions to strike Morgan's affidavit, granted the City's motion for summary judgment and Kooistra's motion for summary judgment as to the tortious interference claim, and denied Kooistra's and Walsh's summary judgment motions on all other claims. The court concluded there were genuine issues of material fact regarding whether Kooistra's statements were false and whether he was negligent in publishing them. Additionally, the court determined that Kooistra was not entitled to immunity because there was no supervisory relationship or other evidence that his statements were "employment-related."

[¶ 17] The court also found genuine issues of material fact regarding whether Walsh abused his conditional privilege, and thus, whether he was immune from suit. Additionally, the court concluded that Walsh had not satisfied the test for discretionary function immunity, and that genuine issues of material fact existed regarding whether his statements were true and whether he acted with a reckless disregard for the truth. Kooistra and Walsh appealed.

## II. LEGAL ANALYSIS

[¶ 18] Because denials of motions for summary judgment are interlocutory, generally they are not immediately reviewable. *Passalaqua v. Passalaqua*, 2006 ME 123, ¶¶ 7–13, 908 A.2d 1214, 1217–18. When the denied motion for summary judgment addressed issues of privilege and/or immunity from suit, however, we will review such decisions based on judicially created exceptions to the final judgment rule. *Hawkes v. Commercial Union Ins. Co.*, 2001 ME 8, ¶ 6, 764 A.2d 258, 263

(holding that the "immunity" exception to the final judgment rule applies when the basis for the motion for summary judgment is complete or qualified immunity). *See also, Webb v. Haas*, 1999 ME 74, ¶ 5, 728 A.2d 1261, 1264.

[¶ 19] We review the decision on a motion for summary judgment de novo, taking the facts in a light most favorable to the non-moving party. *Penn v. FMC Corp.*, 2006 ME 87, ¶ 6, 901 A.2d 814, 815. Summary judgment is appropriate when:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by subdivision (h) show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law.

M.R. Civ. P. 56(c). A material fact is one that can affect the outcome of the case. *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504, 507. A genuine issue of material fact exists when the fact-finder must "choose between competing versions of the truth." *Id.*

### A. Kooistra

#### 1. Discretionary Function and Intentional Act Immunity Pursuant to the MTCA, 14 M.R.S. § 8111(1)(C), (E)

[¶ 20] The MTCA provides government employees with immunity from personal liability when performing discretionary functions or duties, 14 M.R.S. § 8111(1)(C), and for any intentional act or omission occurring within the course and scope of their employment. 14 M.R.S. § 8111(1)(E). To determine whether an act is discretionary we employ a four-part test:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Rodriguez v. Town of Moose River,* 2007 ME 68, ¶ 22, 922 A.2d 484, 490 (quoting *Norton v. Hall,* 2003 ME 118, ¶ 7, 834 A.2d 928, 931). The first, second, and fourth factors determine whether an employee was performing an "official 'function or duty'", *i.e.,* whether the act was encompassed within the employee's duties. *Carroll v. City of Portland,* 1999 ME 131, ¶ 7, 736 A.2d 279, 282–83. When the conduct at issue has little to do with governmental functions and instead resembles decisions or actions by the general population, discretionary function immunity does not apply. *Rodriguez,* 2007 ME 68, ¶ 22, 922 A.2d at 490.

[¶ 21] Conduct that is within the scope of employment is the type of conduct the employee was hired to perform; occurs within the time and space of the employment; and is undertaken, at least partially, to serve the employee's master. *Mahar v. StoneWood Transport,* 2003 ME 63, ¶ 14, 823 A.2d 540, 544 (citing RESTATEMENT (SECOND) OF AGENCY § 288 (1958)). Actions that are not work-related do not fall within this category. *Nichols v. Land Transp. Corp.,* 103 F.Supp.2d 25, 27

(D.Me.1999). An employee who acts in bad faith loses this immunity for intentional acts pursuant to section 8111(1)(E) of the MTCA. This bad faith exception, however, does not apply to discretionary function immunity. *Selby v. Cumberland County,* 2002 ME 80, ¶ 8 n. 6, 796 A.2d 678, 681.

[¶ 22] Kooistra asserts that he is entitled to both discretionary function and intentional act immunity. He argues that his statements arose out of and relate to his employment, and thus come within the scope of his employment.

[¶ 23] These arguments fail given that Kooistra's actions were not undertaken in order to serve the fire department; they did not involve actions he was hired to perform; some of the acts occurred while Kooistra was off-duty and outside his place of employment; all of the actions involved discussion of non-work related events that involved Morgan and individuals who were not employed by the City; and all were motivated by personal, not professional, objectives. Thus, these acts were not undertaken in the course and scope of his employment, and Kooistra is not entitled to intentional act immunity.

[¶ 24] Even if the statements at issue were within the scope of Kooistra's employment, they do not involve discretionary functions. Kooistra, in making statements about Morgan's behavior, was not carrying out a governmental policy and his actions were not essential to the accomplishment of any governmental policy, program, or objective. His actions were not reasonably encompassed within his official duties. Instead, his actions were like that of the ordinary citizen. Thus, Kooistra is not entitled to discretionary function immunity, and the MTCA's $10,000 liability limit does not apply, 14 M.R.S. § 8104–D.

[¶ 25] The Superior Court properly denied Kooistra's motion for summary judgment based on the MTCA.

## 2. Defamation

[¶ 26] Defamation consists of:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Rice v. Alley,* 2002 ME 43, ¶ 19, 791 A.2d 932, 936 (quoting *Lester v. Powers,* 596 A.2d 65, 69 (Me.1991)). Whether a false statement conveys a defamatory message is a question of law. *Rippett v. Bemis,* 672 A.2d 82, 86 (Me.1996).

[¶ 27] Kooistra asserts that, based on the depositions of the women Morgan interacted with, his statements were true and he was not negligent in publishing them. Morgan argues that Kooistra's statements constitute "gross mischaracterizations" of what actually occurred, particularly given Kooistra's awareness that the incidents were consensual.

[¶ 28] While a jury might conclude that Morgan is correct and these statements were "gross mischaracterizations" of what in fact occurred, a jury might also conclude that Kooistra's characterizations were in fact accurate and that these incidents amounted to inappropriate behavior or even rape. Thus, the Superior Court was correct in finding that there remains a genuine issue of material fact that must be resolved by the fact-finder.

## 3. Punitive Damages

[¶ 29] To award punitive damages, a court must find, by clear and convincing evidence, that malice existed. *Shrader–Miller v. Miller,* 2004 ME 117, ¶ 20, 855 A.2d 1139, 1145; *Tuttle v. Raymond,* 494 A.2d 1353, 1363 (Me.1985). Malice is proven by evidence that a party acted with ill will toward the plaintiff or that the conduct was so outrageous that malice can be implied; it is not established by a "mere reckless disregard of the circumstances." *Tuttle,* 494 A.2d at 1361.

[¶ 30] On the present record, a fact-finder could find that Kooistra was motivated in making these statements by his anger at Morgan over what occurred between Morgan and Kooistra's girlfriend. Thus, the Superior Court correctly decided that a genuine issue of material fact exists that must be resolved by the fact-finder as to whether Kooistra acted with malice.

## B. Walsh

### 1. Conditional Privilege

[¶ 31] An allegedly false statement, published to a third party, is subject to a conditional privilege if (1) the statement is made through "normal channels" to further an important public interest; (2) the third party's knowledge of the information will serve the lawful protection of that interest; and (3) the publisher of the statement does not act with malice or a reckless disregard for the truth or falsity of the statement. *Rice,* 2002 ME 43, ¶¶ 21–23, 791 A.2d at 936–37; *Cole v. Chandler,* 2000 ME 104, ¶¶ 6–7, 752 A.2d 1189, 1193–94.

[¶ 32] A conditional privilege protects against liability for defamation when "society has an interest in promoting free, but not absolutely unfettered, speech." *Cole,* 2000 ME 104, ¶ 6, 752 A.2d at 1193 (quoting *Lester,* 596 A.2d at 69).

Whether a conditional privilege exists is a question of law. *Rice*, 2002 ME 43, ¶ 21, 791 A.2d at 936; *Rippett*, 672 A.2d at 87. The determination of whether such a privilege exists is based on the totality of the circumstances, looking at the "interests of the publisher and the recipient." *Rice*, 2002 ME 43, ¶ 22, 791 A.2d at 936 (quoting *Lester*, 596 A.2d at 70).

[¶ 33] A public employee is entitled to a conditional privilege if the challenged statement was "required or permitted in the performance of his official duties." RESTATEMENT (SECOND) OF TORTS § 598A (1977). Whether such a statement is required or permitted in performing official duties is a question of fact. *Rippett*, 672 A.2d at 87.

[¶ 34] If a conditional privilege exists, it remains unless and until the speaker abuses the privilege. *Lester*, 596 A.2d at 69. Whether a defendant abused the privilege is a question of fact. *Rice*, 2002 ME 43, ¶ 21, 791 A.2d at 936. Once a defendant proves entitlement to the privilege, "the burden shifts to the plaintiff 'to come forward with evidence that could go to the jury that [the defendant] abused the privilege.'" *Cole*, 2000 ME 104, ¶ 7, 752 A.2d at 1194 (alteration in original) (quoting *Gautschi v. Maisel*, 565 A.2d 1009, 1011 (Me.1989)). Abuse occurs when the statements are made outside the normal channels or with malice. *Id.* Malice includes making a statement knowing it is false, with a reckless disregard for its truth, or acting out of spite or ill will. *Id.* A reckless disregard for the truth exists only if the speaker had a "high degree of awareness of the probable falsity or serious doubt as to the truth of the statement." *Rippett*, 672 A.2d at 87 (quoting *Onat v. Penobscot Bay Med. Ctr.*, 574 A.2d 872, 874 (Me.1990)). Inadequate investigation into the truth of the statement is not enough to establish malice. *Rice*, 2002

ME 43, ¶ 23, 791 A.2d at 937 (citing *Cole*, 2000 ME 104, ¶ 6, 752 A.2d at 1194).

[¶ 35] Walsh's statements were made in the course of taking a complaint, investigating that complaint, writing his report, and appearing at the grievance hearing, all relating to what may have been perceived to be one or more incidents of sexual harassment. Walsh was acting at the direction of the HR director and Chief of the Fire Department; frank communication was necessary. We have previously held that statements made in the course of an investigation into an employee's actions for disciplinary purposes are conditionally privileged. *See, e.g., Rice*, 2002 ME 43, ¶¶ 24–26, 791 A.2d at 937; *Onat*, 574 A.2d at 874; *Gautschi*, 565 A.2d at 1011. Accordingly, the Superior Court correctly found that Walsh was entitled to a conditional privilege.

[¶ 36] The burden, therefore, shifted to Morgan to demonstrate that Walsh abused his privilege. Morgan failed to present any evidence to support a finding that the privilege was abused; he did not present any affidavits, depositions, or other evidence that the statements repeated by Walsh were not in fact made. *See Cole*, 2000 ME 104, ¶ 7, 752 A.2d at 1194. "Slight inaccuracies ... are immaterial provided the defamatory charge is true in substance." RESTATEMENT (SECOND) OF TORTS § 581 A, cmt. f (1977). Morgan supplied no evidence of actual or implied malice other than his own accusations, and presented no specific evidence that Walsh acted with a reckless disregard for the truth or actual knowledge of the falsity of his statements. More than bald accusations must be presented in order to send the issue of abuse of a conditional privilege to the fact-finder; otherwise the privilege would be meaningless. In this record, there is no evidence sufficient to support a

finding that Walsh abused his privilege and acted in bad faith.

[¶ 37] Although Morgan argues that Walsh's statement to the original complainant regarding other complaints was not through the "normal channels," the argument is without merit. Walsh provided no details about the other complaints. His statement was necessary for the accomplishment of the particular privilege, or at the very least incidental to the necessary publication, and was therefore not outside the "normal channels."

[¶ 38] Because Walsh's statements were conditionally privileged, we need not address the merits of his other arguments.

The entry is:

Order denying Kooistra's motion for summary judgment affirmed. Order denying Walsh's motion for summary judgment vacated. Remanded to the Superior Court for entry of judgment in favor of Walsh based on his conditional privilege.