STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-09-618

DR. RITA DEMEUSE and
TENDER TOUCH VETERINARY
HOSPITAL, LLC.
    Plaintiffs

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS

v.

STATE OF MAINE
Cumberland, ss, Clerk's Office

MAY 0 4 2010

RECEIVED

WGME, INC., DIANA ICHTON,
and JASON BEAULIEU
    Defendants

## BEFORE THE COURT

Before the court are Defendants WGME, Inc.'s ("WGME") and Diana Ichton's ("Ichton") Motion to Dismiss pursuant to M.R. Civ. P. 12(b)(6), and Defendant Jason Beaulieu's ("Beaulieu") Motion to Dismiss pursuant to M.R. Civ. P. 12(b)(6). Defendants WGME and Ichton and Defendant Beaulieu also demand an award of reasonable attorneys fees pursuant to Maine's anti-SLAPP Statute, 14 M.R.S. § 556.

## BACKGROUND

On November 19, 2009, Plaintiffs Dr. Rita Demeuse and Tender Touch Veterinary Hospital, LLC filed a Complaint against Defendants WGME, Ichton, and Beaulieu. Demeuse is a resident of Scarborough, Maine and is a member of Tender Touch Veterinary Hospital. Plaintiffs' First Amended Complaint was filed on February 4, 2010. Plaintiffs' First Amended Complaint alleges counts of defamation, false light and invasion of privacy, and conspiracy against all of the Defendants, and Plaintiffs seek punitive damages. Plaintiffs claim WGME is

vicariously liable for the actions of Ichton, an employee of WGME, and also allege a claim of Abuse of Process against WGME and Ichton.

Plaintiffs' First Amended Complaint asserts the following: On March 22, 2009, an employee of Tender Touch brought in a critically injured dog that had been found in Biddeford, Maine. The dog's owner could not be identified because it did not have a name tag, license tag, microchip or any other identification. Given the dog's condition, Dr. Demeuse decided to operate on the dog without delay to save its life. The Biddeford Police Department was notified that the dog was at Tender Touch.

The Amended Complaint indicates that the dog was owned either by Beaulieu, or Beaulieu's father. Beaulieu's girlfriend, Sarah Hanson located the dog and came to Tender Touch to claim the dog on March 23, 2009. Plaintiffs allege that Hanson represented herself as the owner and signed an Authorization Agreement, authorizing Dr. Demeuse to treat the dog. While Hanson was still at Tender Touch, Beaulieu called Tender Touch and introduced himself as the true owner. Plaintiffs allege Beaulieu represented that he had not authorized the treatment and that he would have preferred to have the dog euthanized rather than incur a $900 bill for the treatment. Given Beaulieu's comments and that the dog had been seriously injured while running loose without any license or identification tags, Demeuse was concerned about the dog's welfare and offered to take ownership of the dog. Plaintiffs allege that Beaulieu agreed to release ownership of the dog to Demeuse. According to the Plaintiffs, Beaulieu provided the last four digits of his social security number to identify himself and directed Hanson – who was still at Tender Touch at the time – to sign a release on his behalf.

2

Subsequent events evidence that Hanson and Beaulieu did not want to relinquish ownership of the dog. On March 26, 2009, Ichton, a reporter from WGME, came to Tender Touch unannounced with a camera crew and interviewed Demeuse about Beaulieu's dog. The Scarborough Police Department and Cumberland County District Attorney's office had initially refused to get involved in this matter stating that it was a civil matter. Plaintiff alleges that Ichton contacted the Cumberland County District Attorney's office and pressured them to take action and take the dog from Demeuse. On March 30, 2009, officers from the Scarborough Police came to Tender Touch on orders from the Cumberland County District Attorney's office and threatened to arrest Demeuse if she did not relinquish possession of the dog. The Police presented Demeuse with an outdated license and rabies documents that were in the name of Michael Beaulieu, Jason Beaulieu's father. Demeuse relinquished the dog to the police because of the threat of arrest.

On March 30, 2009, WGME's TV show "On Your Side" featured a report by Ichton regarding Beaulieu's dog. According to the Amended Complaint, the report mostly consisted of segments where Ichton was either interviewing Beaulieu, or was herself reporting Beaulieu's side of the story. The report did not mention that Beaulieu might not be the true owner of the dog; that Hanson had initially claimed ownership of the dog; that Hanson had authorized treatment of the dog and agreed to pay for the treatment; that Beaulieu represented that he would not have authorized $900 worth of treatment to save the dog's life; or that Beaulieu had released ownership of the dog to Demeuse. Plaintiffs allege the report portrayed Demeuse in an unfavorable light and stated that she was unwilling to give the dog back to Beaulieu because he would not pay the $900

3

bill, he had not had the dog micro-chipped and because he had let the dog get loose. Additionally, Ichton reported as fact that Dr. Demeuse was "wrong" in keeping possession of the dog and did not have the legal right to keep possession of the dog. Plaintiffs allege that WGME broadcast the report without checking the substance and truth of Ichton's and Beaulieu's allegations. Plaintiffs allege that WGME's broadcast intentionally placed Beaulieu in a favorable light, and cast Demeuse in a negative light.

On March 31, 2009, an attorney for the Plaintiffs contacted Ichton to inform her of the factual errors in her "On Your Side" broadcast. The attorney told Ichton that Beaulieu might not be the true owner of the dog; that Hanson had authorized the treatment of the dog and agreed to pay for the treatment; that Beaulieu represented that he would not have authorized the $900 worth of treatment to save the dog's life; and that Beaulieu had released the dog's ownership. WGME subsequently broadcast another brief segment regarding this matter, but it failed to correct the errors of the initial broadcast. Demeuse and her attorney subsequently met with representatives of WGME to discuss their disagreement with the broadcasts, and they watched raw footage of Ichton's interviews in this matter. Plaintiffs allege that WGME has since destroyed the raw footage. Plaintiffs allege they have suffered damages as a result of WGME's spoliation of evidence.

Plaintiffs allege that the Defendants made, reported, and broadcast these false statements with knowledge of their falsity, or in reckless disregard of the truth or falsity of such statements. Plaintiffs allege they have suffered substantial damages as a result of the false and defamatory statements made by Ichton and Beaulieu and broadcast by WGME. Plaintiffs allege that the making, reporting,

4

and broadcasting of the false statements caused harm to Plaintiffs' reputations in the community, as well as in their profession. Count I of the First Amended Complaint asserts defamation and libel against all the Defendants. Count II asserts false light and invasion of privacy against all the Defendants. Count III seeks punitive damages against the Defendants, asserting the Defendants' deliberate conduct was motivated by ill-will, and was so outrageous that malice can be implied. Count IV asserts that WGME is vicariously liable through the doctrine of respondeat superior for the actions of Ichton, who was acting within the course of her employment. Count V alleges Defendants WGME and Ichton are liable for abuse of process when they pressured the Cumberland County District Attorney's Office to become involved. Count VI alleges all of the Defendants engaged in a conspiracy to force Plaintiffs to give up possession of the dog and to defame Plaintiffs.

Defendants WGME and Ichton seek dismissal of all counts and an award of attorneys fees under Maine's anti-SLAPP statute, 14 M.R.S. § 556. Defendant Beaulieu seeks dismissal of all counts asserted against him, and also filed a special motion to dismiss pursuant to Maine's anti-SLAPP statute.

## DISCUSSION

### 1. Standard of Review

A Motion to Dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the complaint and, on such a challenge, 'the material allegations of the complaint must be taken as admitted.'" *Shaw v. Southern Aroostook Comm. Sch. Dist.*, 683 A.2d 502, 503 (Me. 1996) (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994)). When reviewing a Motion to Dismiss, this Court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets

forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* A dismissal under M.R. Civ. P. 12(b)(6) will be granted only "when it appears beyond a doubt that the plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Id.* (quoting *Hall v. Bd. of Envtl. Prot.,* 498 A.2d 260, 266 (Me. 1985)). This is a question of law. *Bean v. Cummings,* 2008 ME 18, ¶ 7, 939 A.2d 676, 679.

## II. Maine's Anti-SLAPP Statute

Defendants Ichton and WGME, and Defendant Beaulieu filed special motions to dismiss and request the court award them reasonable attorney's fees and costs pursuant to Maine's anti-SLAPP[1] statute. 14 M.R.S. § 556. The Defendants claim that Plaintiffs' Complaint seeks to impose liability upon the Defendants for exercising their constitutionally protected right to petition government. In this case, Defendants Ichton, WGME, and Beaulieu allege they were exercising their legal right to petition when they petitioned the Cumberland County District Attorney's office and the Scarborough Police to pressure Dr. Demeuse to relinquish possession of the dog.

### 1. The Legal Framework under Maine's Anti-SLAPP Statute

Maine's anti-SLAPP statute provides for a special motion to dismiss when a claim asserted against the moving party is "based on the moving party's exercise of [their] right of petition under the Constitution of the United States or the Constitution of Maine." *Id.* SLAPP litigation is generally litigation without merit filed to dissuade or punish the exercise of a defendant's First Amendment rights. *Morse Bros., Inc. v. Webster,* 2001 ME 70, ¶ 10, 772 A.2d 842, 846. "The

---

[1] "SLAPP" is an acronym for Strategic Lawsuit Against Public Participation. *Morse Bros., Inc. v. Webster,* 2001 ME 70, ¶ 10, 772 A.2d 842, 846.

typical mischief that the [anti-SLAPP] legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects." *Id.* quoting *Duracraft Corp. v. Holmes Products Corp.*, 691 N.E.2d 935, 940 (Mass. 1998).[2] "SLAPP plaintiffs do not intend to win their suits; rather they are filed solely for delay and distraction, and to punish activities by imposing litigation costs on them for exercising their constitutional right to speak and petition the government for redress of grievances." *Id.*

---

[2] The text of the Massachusetts anti-SLAPP statute is nearly identical to Maine's statute. Maine's statute provides:

> When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. . . . The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading [sic] and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

14 M.R.S. § 556.

By comparison, the Massachusetts anti-SLAPP statute provides:

> In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss. . . . The court shall grant such special motion, unless the party against whom such special motion is made shows that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

MASS. GEN. LAWS ch. 231, § 59H.

quoting *Dixon v. Superior Court*, 30 Cal. App. 4th 733, 36 Cal. Rptr. 2d 687, 693 (Cal. Ct. App. 1994).[3]

In order for the anti-SLAPP statute to apply, four criteria must be present: "(1) a civil complaint or counterclaim (for monetary damages or injunction); (2) filed against nongovernmental individuals or groups; (3) because of their communications to a government body, official, or the electorate; and (4) on an issue of some public interest or concern." *Duracraft*, 691 N.E.2d 935, 940. The party moving for dismissal under the anti-SLAPP statute has the initial burden to demonstrate that the statute applies. *Morse Bros., Inc.*, ¶ 20, 772 A.2d at 849. To prevail on an anti-SLAPP special motion to dismiss, the defendant must "show that the suit was based on some activity that would qualify as an exercise of the defendant's First Amendment right to petition the government." *Schelling v. Lindell*, 2008 ME 59, ¶ 7, 942 A.2d 1226, 1229 citing 14 M.R.S. § 556. If this showing is made, the burden then shifts to the responding party, in this case the Plaintiffs, to establish through pleadings and affidavits (1) "that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law," and (2) that "the moving party's acts caused actual injury to the responding party." *Morse Bros., Inc.*, ¶ 20, 772 A.2d at 849.[4]

---

[3] The court notes that the events leading to this suit occurred between March 22nd and March 31st, 2009, and that Plaintiffs' Complaint was not filed until November 9, 2009. If the Plaintiffs' suit is a SLAPP action, based on this seven-month delay between Defendants' alleged petitioning activities and the commencement of this suit, it is clear that this suit was not filed to "delay or distract" Defendants' petitioning, but rather to punish them for their petitioning activities.

[4] 14 M.R.S. § 556 provides: "This court shall grant the [moving party's] special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any

The Court notes that while the anti-SLAPP statute aims to protect a party's exercise of its right to petition, the statute also impinges on a plaintiff's right to seek redress on a valid claim. *Duracraft*, 691 N.E.2d at 943. "[C]areful consideration should be given 'before a statute designed to protect one party's exercise of its right to petition is interpreted to impinge on another party's exercise of its own right to petition – specifically, its right to petition the courts for redress of grievances by filing a lawsuit.'" *Liberty v. Bennett*, CV-09-459 (Me. Super. Ct., Cum. Cty., January 19, 2010) (Wheeler, J.) citing *Jamison v. OHI*, 2005 Me. Super. LEXIS 161 (Nov. 28, 2005) (Warren, J.).

By raising the anti-SLAPP statute, a defendant moving for anti-SLAPP protection is able to alter traditional burdens in civil procedure in two ways. Generally, when a plaintiff files a complaint and a defendant files a motion to dismiss or a motion for summary judgment, the plaintiff's complaint is viewed in the light most favorable to permitting the claim to go forward. However, when a defendant moves for an anti-SLAPP special motion to dismiss, if the defendant demonstrates that he was engaged in "petitioning activity," the burden shifts so that the plaintiff's claim is at risk of being dismissed unless the plaintiff can demonstrate that the defendant was not really engaged in a valid petitioning activity. Rebecca Ariel Hoffberg, Note, *The Special Motion Requirements of the Massachusetts Anti-SLAPP Statute: A Real Slap in the Face for Traditional Civil Practice and Procedure*, 16 B.U. Pub. Int. L.J. 97, 109 (1996).

> By removing the favorable inference that a complaint should come
> forward, [the anti-SLAPP] law has forced plaintiffs to demonstrate
> a higher burden of proof, while permitting defendants to dismiss

---

arguable basis in law and that the moving party's acts caused actual injury to the responding party."

claims under a lower burden of proof. When claims are more easily dismissed, more plaintiffs will lose the opportunity to have their day in court.

*Id.*

Second, "because the special motion requires the consideration of both pleadings and affidavits, the standard of review should resemble the standard for reviewing a motion for summary judgment." *Morse Bros., Inc.,* at ¶ 17, 772 A.2d at 848. However, typically a defendant will raise an anti-SLAPP special motion to dismiss early in the proceedings. When the burden shifts to the plaintiff to show that moving party's exercise of its right to petition was sham petitioning and to show that the moving party's acts caused actual injury, the plaintiff is forced to make these showings well before a plaintiff has had an opportunity to conduct discovery to (1) obtain evidence to show the defendant was engaged in sham petitioning, (2) produce evidence of actual injury, and (3) develop supporting facts for his claim or claims.

An additional problem exists for a plaintiff who asserts a valid defamation claim. Generally SLAPP suits filed to dissuade petitioning activities are camouflaged as ordinary civil actions such as defamation or abuse of process. Hoffman, *The Special Motion,* supra, at 97. What happens if the movant is engaged in a petitioning activity that is defamatory? Does an anti-SLAPP motion in that scenario defeat a valid defamation claim?

The caselaw interpretations of the anti-SLAPP statutes in Maine and Massachusetts attempt to restore a modicum of balance to the traditional right of plaintiffs to petition the court for redress of grievances, which is eroded by the anti-SLAPP statute's burden shifting.

In *Duracraft Corporation v. Holmes Products Corporation*[5] the Massachusetts Supreme Court addressed the fact that the anti-SLAPP statute could undermine a plaintiff's ability to bring a valid claim. The Massachusetts Supreme Court recognized that claims under Massachusetts' anti-SLAPP statute[6] can be used as a litigation tactic – as a sword instead of a shield – to deter a plaintiff's valid claim and recognized a need to balance the interests of the parties. The Massachusetts Supreme Court analyzed the anti-SLAPP statute's phrase "[i]n any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution . . . ." MASS. GEN. LAWS ch. 231, § 59H. The court adopted a construction of "based on" that limits the use of anti-SLAPP motions made against apparently meritorious claims. *Duracraft*, 691 N.E.2d at 943.[7] Under this construction the moving party needs "to make a threshold showing through the pleadings and affidavits that the claims against it are "based on" the [moving party's] petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." *Id.*

---

[5] In *Duracraft*, the parties were business competitors engaged in a trademark dispute. *Duracraft*, 691 N.E.2d at 937. Holmes hired a former Duracraft employee, who had been a witness in the trademark dispute and had signed a nondisclosure agreement with Duracraft. *Duracraft*, 691 N.E.2d at 937-38. After Holmes hired the employee, the employee's deposition was taken. Duracraft filed suit alleging the employee made statements during the deposition which breached his nondisclosure contract with Duracraft, breached his fiduciary duties, and violated attorney-client and work-product privileges. *Id.* Holmes filed a special motion to dismiss pursuant to Massachusetts' anti-SLAPP statute. *Id.* at 939.

[6] *See supra* n. 2. Massachusetts' anti-SLAPP statute is nearly identical to Maine's anti-SLAPP statute.

[7] The court stated "we adopt a construction of 'based on' that would exclude motions brought against meritorious claims with a substantial basis other than or in addition to the petitioning activities implicated." *Duracraft*, 691 N.E.2d at 943

This interpretation is bolstered by the use of the plural nouns "claims," "counterclaims," and "cross-claims" in the statute. The legislatures could have enacted laws which provided that an anti-SLAPP motion to dismiss may be brought if "any" of the claims against the moving party were based on the moving party's right to petition. Instead, the legislatures made "claims" plural, which suggests that they intended for an anti-SLAPP motion to apply only to those claims against the moving party that were based on the moving party's right to petition.

In *Morse Brothers Inc. v. Webster*, the Law Court adopted the reasoning of *Duracraft*. In *Morse Brothers*, the Law Court stated that the first step in deciding an anti-SLAPP claim required the court to "determine whether the claims against the moving party are based on the moving party's exercise of the right to petition." *Morse Brothers Inc.*, at ¶ 19, 772 A.2d at 849 citing *Donovan v. Gardner*, 740 N.E. 2d 639, 642 (Mass. App. Ct. 2000). Citing *Duracraft*, the Massachusetts Court of Appeals in *Donovan* stated that in order "to gain the prophylactic effect of the statute, the special movant must make a threshold showing through the pleadings and affidavits that the asserted claims against it are 'based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.'" *Donovan*, 740 N.E.2d at 642, citing *Duracraft*, 691 N.E.2d at 943. This court recites this history to highlight that a moving party asserting that Maine's anti-SLAPP statute applies, has the initial burden to show that the claims against it are based on the moving party's petitioning activities alone.

2. **Defendants' Anti-SLAPP Claims**

As an initial matter, the anti-SLAPP claims of Defendants WGME and Icthon must fail because neither was petitioning on its own behalf, but both were instead petitioning to the Scarborough Police Department and the Cumberland County District Attorney on behalf of Defendant Beaulieu. *See Kobrin v. Gastfriend*, 821 N.E.2d 60, 63 (Mass. 2005) (finding that the anti-SLAPP statute does not apply on the ground that "the defendant was not seeking from the government any form of redress for a grievance of his own or otherwise petitioning on his own behalf, he was not exercising his "right of petition under the constitution" within the meaning of the statute."). The anti-SLAPP statute "is designed to protect overtures to the government by parties petitioning in their status as citizens." *Kobrin*, 821 N.E.2d at 64. While the anti-SLAPP statute has afforded protections to the attorney of a petitioning citizen, *see Maietta Constr. Inc. v. Wainwright*, 2004 ME 53, 847 A.2d 1169; *see also Plante v. Wylie*, 824 N.E.2d 461 (Mass. App. Ct. 2005), it was not intended to protect the news media, or its representatives, who have an independent responsibility to report news accurately.

The Court now turns to Defendant Beaulieu's anti-SLAPP claim. Plaintiffs underlying claims against Beaulieu are defamation (Count I), and false light and invasion of privacy (Count II). Beaulieu allegedly petitioned by contacting the Scarborough Police and/or the Cumberland County District Attorney's office, and by contacting WGME and Ichton to investigate and air a story on Ichton's show. In filing this special motion to dismiss, Beaulieu is claiming that the Plaintiffs filed suit in response to his petitioning activities, apparently in an effort to punish him for petitioning. *See* supra n. 3. The Court notes that Beaulieu's petitioning activities do not involve the typical subject matter that the anti-

13

SLAPP statute was intended to address. Instead of petitioning against a development project, *Morse Brothers*, ¶ 10, 772 ME at 846, or a corporation's violation of environmental regulations, Hoffberg, *The Special Motion*, supra at 97, Beaulieu's petitioning activities concerned alleged ownership of a dog. However, because "petitioning activities" are broadly defined under the statute, Beaulieu's petitioning qualifies as an exercise of his First Amendment right to petition.

A review of the pleadings and supporting and opposing affidavits supports the court's determination that Plaintiffs have shown that (1) Beaulieu's right to petition was devoid of any reasonable factual support or any arguable basis in law, and (2) Beaulieu's actions caused actual injury to the party. Beaulieu's petitioning was premised on his dispute with Demeuse over unauthorized veterinary charges, and his belief that Demeuse had no legal right to withhold possession of the dog. Demeuse attached to her affidavit as Exhibit A, the signed authorization for treatment that Beaulieu's girlfriend signed after Demeuse treated the dog. Demeuse also attached to her affidavit as Exhibit B, the ownership contract Beaulieu's girlfriend signed on his behalf, which transferred ownership of the dog to Demeuse, and waived Beaulieu's claim of ownership of the dog.[8] Demeuse further states in her affidavit that she explained

---

[8] The ownership contract states:
> I, Jason Beaulieu, do here state that I am the legal owner or guardian of Rocky, a 3 year old yellow Labrador Retriever. I do hereby release Rocky into the care and custody of Tender Touch Veterinary Hospital and Dr. Rita Demeuse. I no longer have any claim to this animal and will not have access to information about his health or whereabouts. I have verbally consented to this over the phone, as verified by the last 4 digits of my SSN, 9346. Sara Hanson signs below as a witness to my intentions.

Demeuse Aff., Jan. 13, 2010, Ex. B.

to Ichton on March 26th that she owned the dog by virtue of this contract. In the story aired on the show "On Your Side," neither Beaulieu nor Ichton mentioned the signed authorization of treatment or the contract. Beaulieu did not file any affidavit at all and relies on the denials contained in his answer to Plaintiffs' complaint. Plaintiffs also met their burden in showing that Defendants caused actual injury. Plaintiffs engaged Jeffrey Worthing, a certified public accountant, to estimate Plaintiffs' lost revenue resulting from the broadcast of the story. Worthing states in his affidavit that Plaintiffs lost $570,277.00 as a result of Defendants' broadcast. *See* Worthing Aff., Ex. A.

Because Plaintiffs have met their burden to show that Beaulieu's petitioning activity was devoid of any reasonable factual support or arguable basis in law and because Beaulieu's acts caused actual injury, Beaulieu's motion to dismiss based on 14 M.R.S. § 556 is denied.

## III. Defamation Claim

Plaintiffs allege Defendants made and reported false and defamatory statements that were broadcast during the TV show "On Your Side," by Defendant WGME. A statement is defamatory "if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Bakal v. Weare*, 583 A.2d 1028, 1029 (Me. 1990) (quoting Restatement (Second) of Torts § 559). A claim of defamation consists of:

1) a false and defamatory statement
2) an unprivileged publication to a third party
3) fault amounting at least to negligence on the part of the publisher; and
4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

15

*Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991). While all the facts and details surrounding a claim of defamation do not need to be stated to withstand a motion to dismiss, a complaint alleging defamation must allege all of the elements of the tort in order to place the defendant on notice of the claim against them. *Vahlsing Christina Corp. v. Stanley*, 487 A.2d 264, 267 (Me. 1985). A complaint alleging defamation will not be dismissed so long as the plaintiff has "adequately alleged the necessary elements of defamation, and sufficiently apprised the defendant of the nature of the claim." *Id.*, 487 A.2d at 267. The court addresses the defendants' alleged statements separately.

1. **Ichton's and WGME's alleged defamatory statements**

Defendants Ichton and WGME contend that Plaintiffs' defamation claim should be dismissed because Plaintiffs failed to specifically allege which statements were false, and which statements could be attributed to them. The court disagrees that this provides grounds for dismissal. At the motion to dismiss stage,[9] a plaintiff's failure to specifically allege the defamatory material is not necessarily fatal to the plaintiff's claim. *Vahlsing Christina Corp.*, 487 A.2d at 267. In order to prevail in a defamation claim, the plaintiff need not provide exact proof of all of the alleged words in the statement, but must prove the material words essential to the defamation claim. *Saunders v. VanPelt*, 497 A.2d 1125-26 (Me. 1985). Plaintiffs defamation claims are concerned with the

---

[9] "Modern pleading and proof rules have relaxed old technicalities of defamation pleading. A pleading is tested by whether it 'alleges facts which would entitle plaintiff to relief on some theory or if it avers every essential element of a claim.'" Simmons, Zillman & Gregory, *Maine Tort Law* § 13.04 (1999 ed.) at 363 quoting *Vahlsing Christina Corp. v. Stanley*, 487 A.2d 264, 267 (Me. 1985).

16

statements reported, the omission of facts from the report, and the tenor of the report.

Plaintiffs allege that the story Ichton and WGME broadcast consisted of Ichton interviewing Beaulieu or reporting Beaulieu's side of the story. Despite interviewing Demeuse and getting her side of the story, the story stated that Demeuse was unwilling to give the dog back to Beaulieu because he would not pay the $900 bill, he had not had the dog microchipped, and because he had let the dog get loose. Plaintiffs allege Ichton omitted the fact that Beaulieu released ownership of the dog after he stated he would rather have euthanized it than pay for its treatment. Plaintiff also alleges Ichton reported as fact that Demeuse was "wrong" in keeping possession of the dog and did not have a legal right to keep the dog.

Defendants Ichton and WGME claim that Plaintiffs' defamation claim should be dismissed because the claim rests on non-actionable statements of opinion. A defamation claim requires that the statement be an assertion of fact, and not merely an opinion. *Lester*, 596 A.2d 65, 69. Under the First Amendment, "statements are protected as opinion unless "provably false" and capable of being reasonably interpreted as making or implying false and defamatory statements concerning actual facts." *Lester*, 596 A.2d at 71 n. 9.

"Whether an allegedly defamatory statement is a statement of fact or opinion is a question of law." *Ballard v. Wagner*, 2005 ME 86, ¶ 11, 877 A.2d 1083, 1087. "In assessing whether a statement expresses fact or opinion, [the court] looks to the totality of the circumstances and to whether the statement was intended to state an objective fact or a personal observation." *Id.*, ¶11, 877 A.2d 1087-88. The crucial difference between statements of fact and opinion depends

upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or a statement of existing fact." *Id.*, ¶ 12, 877 A.2d at 1088. In assessing whether words are defamatory, "they must be taken in their ordinary and usual meaning." *Id.*

Plaintiffs' Complaint against Ichton and WGME alleges two statements. The first is that Ichton's report stated that Dr. Demeuse was unwilling to give the dog back to Beaulieu because he would not pay the $900 bill, while omitting the facts that Beaulieu released ownership of the dog to Demeuse, and stated he would have had the dog euthanized. The second alleged statement is that Ichton reported as fact that Demeuse was "wrong" in keeping the dog and that she did not have a legal right to keep the dog. Both of these statements are capable of being understood by an ordinary person as expressions of fact. Accordingly, Plaintiffs defamation claim against Ichton and WGME should not be dismissed on the ground that the statements are non-actionable opinion.

## 2. Beaulieu's alleged defamatory statements

The Amended Complaint alleges that Beaulieu made the following three statements, which aired on WGME's show "On Your Side," in Ichton's report:

> "We offered to pay half the invoice and she told us there is no such thing as free veterinary care."

> "We never authorized to have $900 put into the dog."

> And, Beaulieu claimed that Rocky [the dog] "should be home" with his family.

Pl.'s Compl. (Feb. 4, 2010) ¶¶ 30-32. The third statement, that the dog "should be home," is dismissed as a non-actionable expression of opinion. However, the first two statements could be defamatory and could be "provably false" by the

18

Plaintiffs. Therefore, Defendant Beaulieu's motion to dismiss the defamation claim is granted in part and denied in part.

## IV. False Light and Invasion of Privacy Claims

Defendants Ichton, WGME, and Beaulieu claim that Plaintiffs' claim for false light and invasion of privacy should be dismissed because the alleged statements are not highly offensive. Defendant Beaulieu claims that there is nothing in the Complaint that would indicate that Beaulieu made any highly offensive statements. Defendants Ichton and WGME claim that Plaintiffs' dispute with Beaulieu was a commercial dispute, in which Demeuse was not willing to return the dog because the owner would not pay for the surgery and because she had concerns about Beaulieu's fitness as an owner.

The Law Court adopted the Restatement (Second) of Torts § 652E for the definition of false light claims. *Nelson v. Maine Times*, 373 A.2d 1221, 1223 (Me. 1977). The Restatement provides:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E. The substance of Beaulieu's and Ichton's statements is that Demeuse would not return the dog to Beaulieu because Beaulieu did not want to pay the bill and because Demeuse was concerned about the dog's welfare. None of their statements mentioned that Demeuse had a legal right to the dog because Beaulieu surrendered ownership over it and had his girlfriend Hanson sign an authorization giving ownership to Demeuse. The story allegedly broadcast by Defendants' could be considered highly offensive to

a reasonable person. As alleged in the Amended Complaint, Defendants portrayed Demeuse as a veterinarian who withheld a dog from its owner because the owner would not pay, and the story mentioned that the police had to take the dog from Demeuse. Based on the allegations in the Complaint, Plaintiffs' false light claim should not be dismissed.

## V. Punitive Damages

Punitive damages are a remedy and not a cause of action. "A demand for punitive damages is not severable as a separate claim." *Cole v. Peterson Realty, Inc.*, 432 A.2d 752, 756 (Me. 1981). At most, Count VI of Plaintiff's Complaint can be construed as a prayer for relief in the form of punitive damages. "To award punitive damages, a court must find by clear and convincing evidence, that malice existed." *Morgan v. Koolstra*, 2008 ME 26, ¶ 29, 941 A.2d 447, 455. Claims alleging malice may be pled generally. M.R. Civ. P. 9(b). Plaintiffs allege that Defendants' actions were motivated by ill will or were so outrageous that malice toward the Plaintiffs could be implied. At the motion to dismiss stage, it is too early to dismiss Plaintiffs' request for punitive damages.

## VI. Vicarious Liability and Conspiracy

Count IV of Plaintiffs' Complaint alleges WGME is vicariously liable for the conduct of Defendant Ichton that caused damages to the Plaintiffs. Plaintiffs allege that Ichton was acting as an employee and agent of WGME at all relevant times, and that she acted within the course and scope of her employment. WGME does not deny Ichton's employment. Count VI of Plaintiffs' Complaint alleges all of the Defendants conspired to 1) force Plaintiff to give up the possession of the dog and 2) to defame the Plaintiffs. Vicarious liability is not a cause of action, but is a principle by which a principal can be held liable for an

20

agent's actionable conduct. The principal or his agent cannot be liable in tort unless the agent committed tortious conduct. Simmons, Zillman & Gregory, *Maine Tort Law* § 16.02 (1999 ed.) at 524. Similarly, "[i]n Maine, conspiracy is not a separate tort but rather a rule of vicarious liability." *McNally v. Mokarzel*, 386 A.2d 744, 748 (Me. 1978). Much like Plaintiffs' request for punitive damages, Counts IV and VI provide Plaintiffs with an avenue for relief rather than a cause of action.

The Court grants Defendants WGME and Ichton's motion to dismiss Counts IV and VI. The factual allegations in Counts IV and VI remain, but they are dismissed as independent grounds for relief. Accordingly Demeuse may still reach WGME through a theory of vicarious liability and all of the Defendants through a theory of conspiracy.

## VII. Abuse of Process

Count V of Plaintiffs' Complaint asserts a claim of abuse of process against Defendants WGME and Ichton. A claim for abuse of process is "the employment of process in a manner not contemplated by the law." *Packard v. Central Maine Power Co.*, 477 A.2d 264, 267. The law court has stated that the elements of an abuse of process claim are "that a defendant: (i) initiated or used a court document or process in a manner not proper in the regular conduct of proceedings, (ii) with the existence of an ulterior motive, and (iii) resulting in damage to the plaintiff." *Tanguay v. Asen*, 1998 ME 277, 5, 722 A.2d 49, 50. The timing of an action giving rise to an abuse of process claim is important. A claim for abuse of process "covers the allegedly improper use of individual legal procedures after a suit has been filed properly." *Simon v. Navon*, 71 F.3d 9 (1st Cir. 1995).

Plaintiffs allege:

> WGME and Ichton acted with malice and without legal justification
> when they pressured the Cumberland District Attorney's Office to
> become involved in a civil matter in order to (1) forcefully and
> unlawfully take the dog away from Dr. Demeuse; [and] (2)
> intimidate Dr. Demeuse and prevent her from pursuing legal
> remedies available to her as guaranteed by the United States and
> Maine Constitutions. . . .

(Compl., ¶ 56). Plaintiffs allege that Defendants WGME and Ichton pressured the

District Attorney's Office before Plaintiffs filed suit. Plaintiffs' abuse of process

claim fails because it does not allege the Defendants used a legal process after

Plaintiffs' filed suit to achieve an ulterior motive. In this case there is no court

document or initiation of court process that is alleged to have been used

improperly.

## VIII. WGME's and Ichton's Assertion of Conditional Privilege

Defendants WGME and Ichton assert that Plaintiffs' claims for

defamation, false light, and abuse of process must fail because their alleged

pressuring of the Cumberland County District Attorney's office and the

broadcasted report on "On Your Side" are conditionally privileged. The Law

Court discussed conditional privilege in *Morgan v. Kooistra*, 2008 ME 26, 941 A.2d

447.

> An allegedly false statement, published to a third party, is subject
> to a conditional privilege if (1) the statement is made through
> "normal channels" to further an important public interest; (2) the
> third party's knowledge of the information will serve the lawful
> protection of that interest; and (3) the publisher of the statement
> does not act with malice or a reckless disregard for the truth or
> falsity of the statement.
>
> A conditional privilege protects against liability for defamation
> when "society has an interest in promoting free, but not absolutely
> unfettered, speech." Whether a conditional privilege exists is a
> question of law. The determination of whether such a privilege

exists is based on the totality of the circumstances, looking at the "interests of the publisher and the recipient."

*Morgan*, ¶¶ 31-32, 941 A.2d at 455-56 (internal citations omitted). Statements made by a person living in the community to a police officer for the purpose of protecting one's property, and to communicate to a police officer for the purpose of aiding in the detection of a crime are conditionally privileged. *Roche v. Egan*, 433 A.2d 757, 765 (Me. 1981). A conditional privilege exists unless the speaker abuses the privilege. *Morgan*, ¶ 34, 941 A.2d at 456. A conditional privilege for a defamatory statement can be lost if the statements claimed to be privileged "were not published with an honest belief in their truth," if they were published with reckless disregard for the truth, *Roche*, 433 A.2d at 765, or if the statements were made "outside the normal channels or with malice." *Morgan*, ¶ 34, 941 A.2d at 456. At the Motion to Dismiss stage, it is too early for the court to determine if WGME's and Ichton's statements are protected by a conditional privilege.

## DECISION

Therefore, the entry is:

Defendants' anti-SLAPP Motion to Dismiss are DENIED. Defendants Ichton and WGME's Motion to Dismiss Plaintiffs' defamation claim is DENIED. Defendants' Motion to Dismiss Plaintiffs' defamation claim against Defendant Beaulieu is granted in part and denied in part, consistent with this Order. Defendants' Motions to Dismiss Plaintiff's false light claims are DENIED. Defendants' Motions to Dismiss Plaintiff's Counts IV (vicarious liability) and VI (conspiracy) is granted in accordance with this Order. It is premature to

23

determine if Defendants Ichton and WGME are protected by a conditional

privilege. The Motion to Dismiss Plaintiffs' abuse of process claim is GRANTED.

Dated at Portland, Maine this _____ day of _____, 2010.

Robert E. Crowley
Justice, Superior Court

DR. RITA DEMEUSE
TENDER TOUCH VETERINARY HOSPITAL LLC

WGME INC- *served 11-3-09*
DIANA ICHTON - *served 10-29-09*
✓JASON BEAULIEU *served 11-6-09*

vs.    ~~modiction w/ J. Bowie~~    3-07-10

| Plaintiff's Attorney(s) | Defendant's Attorney(s) |
|---|---|
| AARON K BALTES ESQ<br>BERNARD J BRODER III ESQ | Charles Smith, Esq (for Jason Beaulieu)<br>Gregory Hansel, Esq. (WGME & Ichton)<br>Sigmund Schutz, Esq. |