MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2016 ME 75
Docket:       Cum-15-294
Argued:       April 7, 2016
Decided:      May 24, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.

STATE OF MAINE

v.

MERRILL KIMBALL

MEAD, J.

[¶1]  Merrill Kimball appeals from a judgment of conviction for intentional or knowing murder, 17-A M.R.S. § 201(1)(A) (2015), entered in the Unified Criminal Docket (Cumberland County, *Cole, J.*) following a jury trial.  Kimball contends that the court erred in (1) declining to give a jury instruction addressing the affirmative defense of adequate provocation, 17-A M.R.S. § 201(3) (2015), (2) admitting evidence that he had been drinking on the day that he shot the victim, and (3) limiting evidence concerning the relationships between Kimball's family members and the victim's family members.  We affirm the judgment.

I.  BACKGROUND

[¶2]  Viewed in the light most favorable to the jury's verdict, the evidence supports the following facts.  *See State v. Weaver*, 2016 ME 12, ¶ 2, 130 A.3d 972.  Stan Brown is a ninety-five-year-old resident of North Yarmouth, where he lives

2

on his farm and keeps bees. The shooting at issue in this case took place in the context of a dispute between members of Brown's family,[1] and Merrill Kimball and his wife Karen Kimball.[2] Karen helped Brown at the farm and also raised her own bees and harvested honey there. The inter-familial dispute centered primarily on the extent of Karen's purported influence over Brown and her inclusion in his will.

[¶3] On October 6, 2013, Craig Rawnsley, Brown's grandson, was at the farm. After he called Karen Kimball to tell her that "things were going to change around here," Karen became concerned about the several thousand dollars' worth of harvested honey that she had stored at Brown's farm. Eventually, Brown's family members and Karen and Merrill Kimball all went to the farm.

[¶4] Kathleen Kelley, Brown's daughter, testified that when Merrill Kimball arrived in his truck, he drove down the driveway "[v]ery fast . . . and the rocks were flying." Rawnsley was standing by the shop where the honey was stored. When he asked the Kimballs to leave, Karen said that she would wait for the sheriff to arrive. Kathleen Kelley then called 9-1-1. Merrill and Leon Kelley, Kathleen's husband, encountered each other in the driveway; Merrill asked Leon,

---

[1] Members of Brown's family present at the shooting were Kathleen Kelley, Brown's daughter; Leon Kelley, the victim and Kathleen's husband; Robin Rawnsley-Dutil, Kathleen's daughter and Brown's granddaughter; and Craig Rawnsley, Kathleen's son and Brown's grandson.

[2] Damon Carroll, who is Karen Kimball's son and Merrill Kimball's stepson, was also present.

"Who the fuck are you?" After Leon took Merrill by the shoulders to turn him around and asked him to wait by the road, Merrill tried to push Leon but instead stumbled backward about three steps. He then pulled out a handgun and shot Leon three times; Leon died from his wounds at a hospital soon afterward.

[¶5] The Cumberland County Grand Jury indicted Kimball for murder, 17-A M.R.S. § 201(1)(A). He pleaded not guilty and retained counsel. The case went to trial in April 2015; at its conclusion the jury returned a verdict of guilty. Kimball's post-trial motions for a judgment of acquittal and for a new trial were denied. At a sentencing hearing, the court entered judgment and sentenced Kimball to twenty-five years' imprisonment and ordered him to pay $5000 in restitution to the Victims' Compensation Fund. Kimball appealed.

## II. DISCUSSION

A. Adequate Provocation Instruction

[¶6] Kimball states that the "[m]ost serious" issue on appeal is the trial court's alleged error in declining to instruct the jury on adequate provocation manslaughter. In its initial charge, the court thoroughly instructed the jury on the elements of murder, manslaughter, self-defense, and imperfect self-defense. *See* 17-A M.R.S. §§ 108(2), 201, 203 (2015); *State v. Hanaman*, 2012 ME 40, ¶ 13 n.4, 38 A.3d 1278 ("If a defendant acted with imperfect self-defense, in that it may have been unreasonable for him to believe that deadly force was necessary, then

4

the defendant cannot be held criminally liable for any crime requiring intention or knowledge of the actor, but he can be held responsible for a crime for which recklessness or criminal negligence suffices as the culpable mental state." (citations and quotation marks omitted)). After the court completed its instructions it asked the attorneys for comment at sidebar; Kimball said that he was satisfied, although he did not think that the written instructions should be sent into the jury room.

[¶7]    The jury began deliberating on the afternoon of April 14, 2015, recessed for the evening without reaching a verdict, and continued the following morning. After the jury resumed deliberations on April 15, the court met with counsel in chambers concerning Kimball's request—apparently prompted by an article that appeared in that day's local newspaper—that the court give the jury an additional instruction concerning adequate provocation manslaughter. The statutory affirmative defense of adequate provocation, if proved by the defendant by a preponderance of the evidence, reduces a murder charge to manslaughter:[3]

> **3.** It is an affirmative defense to a prosecution [for intentional or knowing murder] that the person causes the death while under the influence of extreme anger or extreme fear brought about by adequate provocation.
>
> **4.** For purposes of subsection 3, provocation is adequate if:

---

[3]    17-A M.R.S. §§ 101(2), 203(1)(B) (2015); *see State v. Hanaman*, 2012 ME 40, ¶ 1 n.1, 38 A.3d 1278.

**A.** It is not induced by the person; and

**B.** It is reasonable for the person to react to the provocation with extreme anger or extreme fear, provided that evidence demonstrating only that the person has a tendency towards extreme anger or extreme fear is not sufficient, in and of itself, to establish the reasonableness of the person's reaction.

17-A M.R.S. § 201(3)-(4) (2015).

[¶8]  The State, relying on *Hanaman*, objected to the requested instruction. The court observed that "[f]rom the time that this case was assigned to me in meeting with the attorneys, it was described as being a classic case of self-defense . . . it was never suggested that extreme anger or extreme fear were going to be a part of this case."  After discussing *Hanaman*, the court declined to give Kimball's requested instruction, ruling that (1) the affirmative defense of adequate provocation was not generated by the evidence; and (2) the instruction would be confusing to the jury.

[¶9]  In *Hanaman*, we said that

[w]e will vacate a judgment based on a denied request for a jury instruction if the appellant demonstrates that the requested instruction (1) stated the law correctly; (2) was generated by the evidence; (3) was not misleading or confusing; and (4) was not sufficiently covered in the instructions the court gave.  In addition, the court's refusal to give the requested instruction must have been prejudicial to the requesting party.

2012 ME 40, ¶ 16, 38 A.3d 1278 (citation omitted).

6

[¶10]    Concerning the question of whether the adequate provocation instruction was generated in this case,

> [i]t is the [trial] court, in the first instance, that must determine whether the evidence is legally sufficient to generate the adequate provocation manslaughter defense.  Viewing the evidence in a light most favorable to the defendant, the court must determine as a question of law whether there is any evidence from which the jury could find provocation and other elements that would reduce the offense to manslaughter.  The test for measuring the sufficiency of the evidence is whether a jury could rationally have found that the defense was established by a preponderance of the evidence.

*Id.* ¶ 18 (citations and quotation marks omitted).  A court makes that determination in light of our observation that "[t]here are few instances when we have recognized conduct as being sufficient to engender extreme anger or fear and mitigate the conduct of a defendant."  *Id.* ¶ 23 (quotation marks omitted).  That is so, in part, because the victim's provocation must be "of such a nature that [the defendant's] reaction to it with extreme anger or extreme fear was objectively reasonable."  *Id.* ¶ 20.  We review questions of law de novo.  *Freeman v. NewPage Corp.*, 2016 ME 45, ¶ 5, --- A.3d ---.

[¶11]    Here, the court found that the adequate provocation manslaughter instruction was not generated because the evidence was not legally sufficient to support an objectively reasonable conclusion that the victim provoked Kimball to such an extent that Kimball's culpability in using deadly force was reduced.  We agree.  The court accurately summarized the trial testimony:

[O]nce [Kimball and Leon Kelley] met in the driveway . . . [Kimball] was told to leave in pretty abrupt language, [] his shoulders were taken and turned and he was directed to leave. . . . [H]e was pushed with open hands several times . . . backwards and he retreated. [Kimball] elected to go there. He was requested to leave by the people there. I don't see that those facts would support a claim for adequate provocation.

[¶12] We conclude that Kelley, who was unarmed, did not act in a way that was objectively sufficient, as a matter of law, to provoke extreme anger or fear in Kimball and thereby justify Kimball's deadly response in wielding a firearm and shooting Kelley multiple times. *See, e.g., State v. Lockhart*, 2003 ME 108, ¶ 42, 830 A.2d 433 (concluding that the victim heatedly arguing with, slapping, and hitting the defendant did not constitute adequate provocation to extreme anger justifying the use of deadly force). Similarly, neither the threat of economic harm to Kimball's wife posed by the potential loss of the honey that she had stored at the farm, nor any perceived threat resulting from the Brown family's hostility to her inclusion in Stan Brown's will, could constitute adequate provocation justifying Kimball's shooting Leon Kelley.

[¶13] Concerning the relationship between instructions on self-defense and adequate provocation and the potential for jury confusion, we said in *Hanaman* that

[w]e recognize that both instructions are sometimes given. However, it is the rare case in which a fact-finder could find that the State has carried its burden of disproving self-defense and then go on to find,

> under the same set of facts, that the defendant has nonetheless carried his burden of proving adequate provocation manslaughter. This is not one of those cases. Under the facts of this case, we cannot conclude that the court erred when it determined that self-defense instructions, with a burden of proof more favorable to [the defendant], subsumed an instruction as to adequate provocation manslaughter.

*Hanaman*, 2012 ME 40, ¶ 28, 38 A.3d 1278 (citation and footnote omitted). As an example of a case where both instructions might be given, we hypothesized "a parent observing severe abuse of his or her child, confronting the perpetrator, and killing the perpetrator after the perpetrator attacks the parent." *Id*. ¶ 28 n.6.

[¶14] The trial court, relying on *Hanaman*, did not err in concluding that this was not a case where both instructions were required. The court instructed the jury that

> if the State proves beyond a reasonable doubt at least one of the following three things, that is, one, that Merrill Kimball did not actually believe that Leon Kelley was about to use unlawful deadly force against him or a third person or, two, that Mr. Kimball did not actually believe his use of deadly force was necessary to defend himself or a third person against Mr. Kelley or, three, that Mr. Kimball or a third person failed to retreat from the encounter with Mr. Kelley, despite the fact that he or that person knew that he or the third person could do so with complete safety, then the State has met its burden of demonstrating beyond a reasonable doubt the absence of self-defense and you should find Mr. Kimball guilty.

*See* 17-A M.R.S. § 108(2)(A)(1), (C)(3)(a) (2015); Alexander, *Maine Jury Instruction Manual* § 6-61 at 6-112 (2016 ed.). Because it found Kimball guilty,

the jury necessarily found that the State proved at least one of the three alternatives beyond a reasonable doubt.

[¶15]  In this case, any of the three alternatives makes an "extreme anger or extreme fear brought about by adequate provocation" defense[4] untenable, in that Kimball could not have been adequately provoked to use deadly force to ward off Leon Kelley if he believed that (1) there was no imminent threat of deadly force from Kelley, or (2) the use of deadly force against Kelley to defend himself was unnecessary, or (3) he could have safely retreated.  For that reason, it would be confusing to the jury for it to find that the State had disproved Kimball's need to use deadly force in self-defense beyond a reasonable doubt, only to then be asked whether Kimball had proved by a preponderance that the same deadly force was nevertheless a mitigating circumstance.  *See* 17-A M.R.S. § 203(1)(B) ("The fact that the person causes the death while under the influence of extreme anger or extreme fear brought about by adequate provocation constitutes a mitigating circumstance reducing murder to manslaughter . . . .").  As the court found, this is not the "rare case" requiring that both self-defense and adequate provocation instructions be given.  *See Hanaman*, 2012 ME 40, ¶ 28 & n.6, 38 A.3d 1278.

---

[4]  17-A M.R.S. § 201(3).

B.    Kimball's Additional Arguments

[¶16]   Kimball makes two other arguments in his initial brief, neither of which is persuasive.  He first contends that evidence that he drank alcohol on the day of the shooting, absent any evidence that he was impaired, was irrelevant and unfairly prejudicial.  We review the trial court's "determination of relevance for clear error," *State v. Adams*, 2015 ME 30, ¶ 11, 113 A.3d 583 (quotation marks omitted), and reiterate that "pursuant to M.R. Evid. 403[,] [t]he trial court has broad discretion to weigh the relevance of evidence against the danger of unfair prejudice to the defendant." *State v. Jackson*, 1997 ME 174, ¶ 9, 697 A.2d 1328 (footnote omitted).

[¶17]   There was evidence admitted at trial that Kimball had consumed two rum and cokes over the course of an hour at a friend's house on the afternoon of the shooting.  Although there was no evidence that he was physically impaired, the fact that Kimball had been drinking on the afternoon of the shooting was relevant because the jury could consider whether it had an effect on Kimball's state of mind, judgment, or impulsivity, as well as his credibility on other issues.  *See* M.R. Evid. 401 ("Evidence is relevant if [] [i]t has *any* tendency to make a fact [of consequence] more or less probable . . . ." (emphasis added)).  It was therefore presumptively admissible.  M.R. Evid. 402.  On this record, the court acted within its broad discretion in determining that the evidence of Kimball's drinking was not

*unfairly* prejudicial, and that it was for the jury to determine the weight to give that evidence. *See* M.R. Evid. 403; *State v. Allen*, 2006 ME 21, ¶ 13, 892 A.2d 456 ("To sustain a Rule 403 objection, the prejudice must be more than simply damage to the opponent's cause." (quotation marks omitted)).

[¶18] Second, Kimball contends that the court erred in limiting evidence of the animosity between Stan Brown's family and the Kimballs resulting from Karen Kimball's inclusion in Brown's will. "We review a trial court's decision to exclude or admit evidence for an abuse of discretion or clear error." *State v. Waterman*, 2010 ME 45, ¶ 35, 995 A.2d 243 (quotation marks omitted). Contrary to Kimball's contention, our review of the record reveals that the court admitted extensive evidence concerning the inter-familial dispute. The court did not abuse its discretion in its very minor limitation of evidence concerning that issue in order to keep the trial focused on the central issue of whether Kimball was criminally culpable for killing Leon Kelley. *See Laux v. Harrington*, 2012 ME 18, ¶ 37, 38 A.3d 318 (stating that a court has the discretion under M.R. Evid. 403 to avoid "a potentially lengthy mini-trial").

C.     *Brady v. Maryland* Issues

[¶19] The sole issue raised in Kimball's reply brief is his contention that the State committed a discovery violation, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, when it did not make him aware of information

concerning the Chief Medical Examiner's former employment as the Chief Medical Examiner for the Commonwealth of Massachusetts. Kimball himself notes that the information at issue was contained in a published opinion of the Massachusetts Supreme Judicial Court. *See Flomenbaum v. Commonwealth*, 889 N.E.2d 423 (Mass. 2008). The record does not indicate whether this information was available to, or in the possession of, the State to any greater degree than it was to Kimball. We discern no *Brady* violation upon these facts.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Daniel G. Lilley, Esq., and Cheryl A. Richardson, Esq., Daniel G. Lilley Law Offices, P.A., Portland, for appellant Merrill Kimball

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

**At oral argument:**

Daniel G. Lilley, Esq., for appellant Merrill Kimball

Donald W. Macomber, Asst. Atty. Gen., for appellee State of Maine