Majority: SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Dissent: JABAR, J.
GORMAN, J.
[¶ 1] Bruce and Dennis Plante appeal from the entry of a summary judgment in the Superior Court (York County, Douglas, J.) in favor of Ronald P. Long on their defamation action. The court concluded that the Plantes failed to make the necessary prima facie showing that Long acted with actual malice. We affirm the judgment.
I. BACKGROUND
[¶ 2] The following facts are taken from the parties’ statements of material fact and reflect the summary judgment record in the light most favorable to the plaintiffs as the “parties] against whom summary judgment was entered.”[1] See Diviney v. Univ. of Me. Sys., 2017 ME 56, ¶ 14, 158 A.3d 5.
[¶ 3] Bruce is the Assistant Fire Chief for the Town of Berwick. He also works as a delivery driver for Gagnon Propane and previously served on the Town’s Board of Selectmen. Dennis is the Fire Chief for the Town of Berwick. Long is a resident of Berwick and has a history of publicly criticizing the Berwick Fire Department, including its leadership, and opposing proposed fire department projects. The plaintiffs have both conceded that they are public figures.[2]
[¶4] On October 27, 2011, Long was jogging with his wife on Worster Road in Berwick. Bruce, who was driving a propane truck down that road, “pulled wide around” Long, who waved. Bruce perceived Long’s wave and facial expression as harassing and was “upset.” He pulled the truck to a stop about 150 feet from Long and, while “hanging on the edge of the truck” and raising his voice due to the distance between them, twice yelled to Long, “[H]ey, are you looking for me?” After Long replied that he was not looking for Bruce and that he had “just [been] waving,” Bruce responded,' “[D]on’t bother.” Bruce got back in the truck and drove away. Although he had intended to “let Mr. Long know he wanted nothing to do with him,” Bruce had not intended to “instigate a fight.”
[¶ 5] The next day, Long sent an email to the chief and a captain of the Berwick Police Department alleging that Bruce was harassing him and recounting the events of *245 the previous day. In the email, Long stated that Bruce had yelled, “Hey do you want some of this? Are you fucking looking for me?” and, “Hey I said do you want some of this? Are you looking for me?” Long stated that he had heard that Bruce had “tried to intimidate [several other people] by this very behavior,” and he asked the police to contact those people to “further [their] investigation.” Long further stated that “[Bruce] is clearly mentally unstable and I fear for what he is capable of doing.... [He] is in a position to make me worry about the safety of my family and myself.” The same day, copying Ber-wick’s police chief and another individual, Long sent a second, very similar email to Bruce’s employer at Gagnon Propane.-
[¶6] At some point,[3] Dennis drove behind Long in a vehicle with fire department insignia on it. There were initially two other vehicles between the parties’ cars. Long turned down another road, pulled over, pulled back onto the road after Dennis passed him, and followed Dennis.
[¶ 7] On April 24, 2012, Long sent an email to the Berwick Board of Selectmen and others, stating in part that the Plantes had been following and harassing people. On May 23, 2012, Long sent an email to the Berwick police chief and copied another individual. The email stated in part that Bruce and Dennis had “lied, followed, intimidated, and harassed people to get ‘Their Cause’ pushed through.”
[¶ 8] In June of 2013, the Plantes filed a complaint against Long containing eight counts of libel and one count of punitive damages. Over the course of nearly three years, the parties engaged in a protracted discovery process and motion practice. Although they failed to reach complete agreement through alternative dispute resolution, they did stipulate to the dismissal of Counts' 1 and 7 of the complaint. In May of 2016,' Long filed a motion for summary judgment on the. remaining seven counts, which the court granted on November 7, 2016, after a nontestimonial hearing. The Plantes timely appealed.
.11. DISCUSSION
[¶ 9] This appeal requires us to determine, viewing the facts in the light most favorable to the Plantes as the nonmoving parties, whether any genuine issue of material fact exists and whether Long is entitled to judgment' as a matter of law. Diviney, 2017 ME 56, ¶ 14, 158 A.3d 5; see M.R. Civ. P. 56(c). “When the defendant is the' moving party, [he] must establish that there is no genuine dispute of fact and that the undisputed facts would entitle [him] to judgment as a matter of law. It then becomes the plaintiffs burden to make out a prima facie case and demonstrate that there are disputed facts.” Diviney, 2017 ME 56, ¶ 14, 158 A.3d 5 (alterations omitted) (citation omitted) (quotation marks omitted). We will assume, for .purposes of this opinion, that the statements made by Long were false.[4] The issue to be decided, therefore, is whether the Plantes have made a prima facie showing of actual malice.[5] See Lester v. Powers, 596 A.2d 65, 69 *246 (Me. 1991) (setting out the elements of defamation).
[¶ 10] The Plantes are public figures and, as we have explained,
[discussion of public officials and public figures on matters of public concern, the U.S. Supreme Court has declared, deserves special favor in a democratic society, and thus such discussion is subject to a conditional privilege — the “First Amendment privilege” — that cari be overcome only by clear and convincing evidence of [actual malice, i.e.,] knowledge or disregard of falsity.
Id. at 69 (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). Thus, in order to survive summary judgment, the1 Plantes must present some evidence that at least one of Long’s false statements was made with “ ‘actual malice’ — that is, with knowledge that it was false or with reckless disregard of whether it was false or not.” Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 659, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) (quoting Sullivan, 376 U.S. at 279-80, 84 S.Ct. 710). In other words, they must produce evidence that could demonstrate that it is highly probable that, at the time he sent -the allegedly defamatory emails, Long in fact knew that his statements were false or that he acted “with [a] high degree of awareness of their probable falsity.” Michaud v. Town of Livermore Falls, 381 A.2d 1110, 1116 (Me. 1978) (quotation marks omitted); see Taylor v. Comm’r of Mental Health & Mental Retardation, 481 A.2d 139, 154 (Me. 1984) (explaining that the “clear and convincing” standard of proof, which protects “important public in-terestfs],” requires a plaintiff to prove her allegations “to a high probability”).
[¶ 11] In response to Long!s motion for summary judgment, the Plantes offered evidence contradicting Long’s accounts of the events in question and demonstrating a contentious history between the parties. See supra ¶¶ 4-7. If believed by a trier of fact, the same evidence that showed Long’s statements to be false and the relationship between Long and the Plantes to be contentious could also give rise to an inference that Long bore the Plantes ill will. Contrary to the Plantes’ assertions, however, the evidence of falsity, even combined with the inference of ill will; would not be sufficient to support a clear and convincing determination of actual malice.
[¶ 12] The element of objective falsity is distinct from that of actual malice. At trial, a fact-finder must be presented with sufficient evidence to allow her to conclude that the defendant ‘“in fact entertained serious doubts as to the truth of his publication’ ” regardless “of the assumed objective falsity of the remarks.” Michaud, 381 A.2d at 1114-15 (quoting St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)). We have consistently refused to conclude that a fact-finder may infer that a defendant was “consciously untruthful” from evidence that her accusations were in fact false even if that evidence coincides with indicia of the defendant’s ill will towards the plaintiff," e,g., that the defendant destroyed or discarded her written records of the events in question, Lester, 596 A.2d at 71-72 (concluding that the plaintiffs proposed inference of actual malice was “unsupported speculation” and inadequate to survive a defendant’s motion for summary judgment); see Michaud, 381 A.2d at 1115-16. Rather, we have been clear that “Evidence that some of [the defendant’s] factual premises were objectively false, or even that no reasonable person could have believed them to be true, does not show that she knew or disregarded their falsity.” Lester, 596 A.2d at 71. Permitting a fact- *247 finder to draw such an inference would effectively merge the elements of falsity and actual malice, thereby reducing the heightened burden assumed by pubjic figure plaintiffs in defamation actions and diminishing the “breathing space” for protected speech that Sullivan and its progeny require, Harte-Hanks, 491 U.S. at 686, 109 S.Ct. 2678 (quotation marks omitted); see Lester, 596 A.2d at 69 (citing Sullivan, 376 U.S. at 279-80, 84 S.Ct. 710).
[¶ 13] Nonetheless, the Plantes argue that we “reach[ed] too far” in Lester and that we should merge the elements of falsity and malice in cases involving “personal knowledge.” Their argument ultimately relies on language the United States Supreme Court included in a decision in which it reversed a libel judgment. See Time, Inc. v. Pape, 401 U.S. 279, 290, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971) (concluding that a magazine article summarizing a report by the United States Commission on Civil Rights that discussed police brutality did not demonstrate actual malice). In explaining its holding, the Court determined that the Court of Appeals had erred in concluding that “‘malice’ in the sense of an ‘intent to inflict harm through falsehood’ ... might reasonably be inferred from the very act of deliberate omission, and the issue of malice was consequently one for the jury.” Id. at 285, 91 S.Ct. 633. The Court went on to state, however, that it might be reasonable to infer actual malice from an act of deliberate omission “when the alleged libel purports to be an eyewitness or other direct account of events that speak for themselves.” Id.
[¶ 14] Twelve years later, the Court again discussed the “eyewitness” inference mentioned in Pape and emphasized that its applicability was limited to circumstances where the events at issue are so defined or obvious that there is no room for ambiguity: . ■
[T]he only evidence of actual malice on which the District Court relied was the fact that the statement was an inaccurate description of what [the eyewitness] had actually perceived. [The eyewitness] of course had insisted “I know what I heard,” The trial court took him at his word, and reasoned that since he did know what he had.heard, and he knew that the meaning of the language employed did not accurately reflect what he heard, he must have realized the statement was inaccurate at the time he wrote it. Analysis of this kind may be adequate when the alleged libel purports to be an eyewitness or other direct account of-events that speak for themselves. Here, however, adoption of the language chosen was one of a number of possible rational interpretations of an event that bristled with ambiguities and descriptive challenges for. the writer. The choice of such language, though reflecting a misconception, does not place the speech beyond the outer limits of the First Amendment’s broad protective umbrella,
Bose Corp. v. Consumers Union of the U.S., Inc., 466 U.S. 485, 512-513, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) (citations omitted) (quotation marks omitted).[6]
[¶ 15] This restriction on the applicability of the eyewitness inference — that the inference may be made only when the events “speak for themselves” — is also found in two cases the Plantes rely on in their assertion that the falsity of Long’s *248 statements should be sufficient to allow an inference of malice. The first is Mahoney v. Adirondack Publishing Co., 71 N.Y.2d 31, 523 N.Y.S.2d 480, 517 N.E.2d 1365 (1987), a case in which the New York Court of Appeals considered the eyewitness inference before ultimately deciding that it provided no support for the plaintiff. The New York court held:
The inference depends for its validity on the premise that the eyewitness could not have perceived and understood anything but the truth. Thus, in reporting something else, the observer must have departed from the truth by design. The underlying premise is valid, however, only if the events were unambiguous and the setting was such that the observer could not have misperceived those events. Such conditions, however, cannot simply be assumed; as the proponent of the inference and the bearer of the burden of proof of actual malice, the plaintiff must demonstrate that they exist. No such showing was made here.
Id. 523 N.Y.S.2d 480, 517 N.E.2d at 1369 (emphasis added).
[¶ 16] The second is Ventura v. Kyle, 8 F.Supp.3d 1115 (D. Minn. 2014), a defamar tion action arising from a passage in Chris Kyle’s autobiography describing an altercation with Jesse Ventura. In that case, Ventura asserted, inter alia, that Kyle’s claim that he had punched Ventura was completely false because there had never been any kind of physical altercation between them. Id. at 1121-22. The United States District Court for the District of Minnesota denied summary judgment to Kyle after concluding that, although it was possible that he had misperceived Ventu-ra’s words, Kyle’s statement of “punching out” Ventura did not relate to an ambiguous event and, therefore, an inference of actual malice could be drawn from the falsity of the statement. Id.
[¶ 17] Even assuming that these cases demonstrate that some other courts are moving towards a less rigorous review of the element of malice, neither provides any support for the Plantes because they have not carried their burden of showing that the events in question were unambiguous or that Long could not have misperceived them or, alternatively, that an event described by Long never occurred.
[¶ 18] According to his version of events, Bruce — who admits to being “upset” at the time and believing that Long was “harassing” him — pulled his truck over 150 feet from Long, “[hung] on the edge of the truck,” and yelled at Long, “[A]re you looking for me?” and “[D]on’t bother.” Bruce’s account of the incident is strikingly similar to Long’s and, given Bruce’s acknowledgement that he was upset and yelling and the considerable distance between the parties, what Bruce actually said could have been misperceived by Long. Cf. Mahoney, 523 N.Y.S.2d 480, 517 N.E.2d at 1369-70. Likewise, Dennis admits to having driven a fire department vehicle behind Long for a period of time, an event that could have been misperceived by Long given his apparent fear of Bruce, his belief that Dennis never disciplined or controlled Bruce, and his history of criticizing the fee department. These events bear a great resemblance to those in Mahoney, see id. — events capable of misperception and thus not suitable to support any inference of actual malice. They do not resemble the issue in Ventura — where the parties’ dispute concerned whether a physical altercation had or had not occurred, an event that could not have been misper-ceived, see Ventura, 8 F.Supp.3d at 1121-22.[7]
*249 [¶ 19] Even if we were to adopt such an “eyewitness” inference, it would not be applicable here. Although we agree that Long might fit the definition of an eyewitness, the events he described do not “speak for themselves,” so the Plantes gain no benefit from the application of any possible eyewitness inference of actual malice.[8] Because the Plantes have failed to produce any evidence of the sort required to establish actual malice — evidence of the defendant’s negligence, motive, and intent — they could not prevail at trial, and Long is entitled to a summary judgment.
The entry is:
Judgment affirmed.

. On appeal, Bruce challenges the court’s grant of summaiy judgment as to Counts 2 and 3 of the complaint, which concern emails sent by Long on October 28, 2011. Dennis challenges the judgment as to Counts 5 and 6, which concern emails sent by Long on April 24, 2012, and May 23, 2012. The Plantes also challenge the court's grant of summary judgment in Long's favor as to Count 9 for punitive damages. We address only those facts relevant to the counts at issue on appeal.

. Long attempted to have the suit dismissed in its entirety pursuant to the anti-SLAPP statute, 14 M.R.S. § 556 (2016). We affirmed the trial court's (Fritzsche, J.) determination that this attempt was not timely. Plante v. Long, Mem-15-91 (Nov. 10, 2015).

. The record provides no temporal information about this event.

. Although there are many factual disputes about what each party actually said or did during the incidents that Long complained about, a trier of fact who believed the Plantes’ versions of what occurred could rationally find that Long's statements describing the incidents were falsp,

.Long also asserts that his statements consisted of opinion rather than fact and were therefore not actionable. Because we conclude that the Plantes have failed to make the required prima facie showing of actual malice, however, we do not reach that issue.

. In its decision, the First Circuit referred to the need for "objective facts” that “should provide evidence of negligence, motive, and intent such that an accumulation of the évi-dence and appropriate inferences supports the existence of actual malice.” Bose Corp. v. Consumers Union of the U.S., Inc., 692 F.2d 189, 196 (1st Cir. 1982).

. The Plantes also draw our attention to Welsh v. City and County of San Francisco, *249 No. C-93-3722, 1995 WL 714350 (N.D. Cal. Nov. 27, 1995), in which the parties disputed whether the defendant had in fact “physically grabbed and kissed the plaintiff against her will.” Id. at *5 (alterations omitted) (quotation marks omitted). Although the United States District Court for the Northern District of California merged the elements of falsify and actual malice, we note that — just as in Ventu-ra — the material fact in dispute was whether an incident of physical contact had occurred. See id. Whether such physical contact occurred is an unambiguous event, i.e., an event that neither party could have misperceived.

. A third opinion of the United States Supreme Court also bears on Bruce’s claims on appeal. In Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991), the Court held that an author's "deliberate alteration of the words uttered by a plaintiff does not equate with knowledge of falsity ... unless the alteration results in a material change in the meaning conveyed by the statement.” Id. at 517, 111 S.Ct. 2419. In so holding, the Court explained that the "protection for rational interpretation” of ambiguous events enunciated in Pape and Bose does not extend to "[the] orthodox use of a quotation” by an author — "the-quintessential direct account of events that speak for themselves.” Id. at 519, 111 S.Ct. 2419 (quotation marks omitted).
Although Long’s October 28, 2011, emails attributed the use of specific language to Bruce using quotation marks, Masson does not save Bruce’s claims from summary judgment. The differences between Long’s and Bruce’s accounts of the events of October 27, 2011, are not material. See supra ¶ 18. Given ■ the parties' underlying relationship, the addition or omission of a single instance of profanity and the words "[D]o you want some of this?”, are not significant; either version of events leads the reader to conclude that a hostile interaction took place alongside the road that day. See Masson, 501 U.S. at 517, 111 S.Ct. 2419 ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified.” (quotation marks omitted)). Further, Long’s use of quotation marks was not the "orthodox” or "quintessential” use contemplated by the Court in Masson. Id. at 519, 111 S.Ct. 2419. In stark contrast to Long’s hasty report of his interaction with Bruce, Masson considered the use of quotations that an author for the New'Yorker Magazine incorrectly attributed to the plaintiff although she had access to many hours of taped interviews against which to verify her allegedly libelous statements and although the plaintiff had informed a fact-checker at the magazine that the quotations were incorrect. Id. at 500-02, 513, 111 S.Ct. 2419. Indeed, the Court anticipated just such a case as the Plantes present to us today, acknowledging — after discussing the significance of quotation marks — that the fact that "the [allegedly defamatory] work ... recreates conversations from memory, not from recordings, migh,t indicate that the quotations should not be interpreted as the actual statements of the speaker to whom they are attributed.” Id. at 512-13, 111 S.Ct. 2419. Long’s use of quotations, which were based solely on his memory of a somewhat unusual interaction, is'therefore not dispositive in this instance. See id. at 517, 111 S.Ct. 2419 ("The use of quotations to attribute words not in fact spoken bears in a most important way on [the actual malice] inquiry, but it is not dis-positive in every case.”).