MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2023 ME 36
Docket:        Yor-22-93
Argued:        January 12, 2023
Decided:       July 6, 2023

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.
Majority:      STANFILL, C.J., and MEAD, HORTON, CONNORS, and LAWRENCE, JJ.
Concurrence:   JABAR, J.

NORMAN GAUDETTE et al.

v.

MAINELY MEDIA, LLC, et al.

MEAD, J.

[¶1]  Former Biddeford police officer Norman Gaudette and his wife, Joanne Gaudette, appeal from a judgment of the Superior Court (York County, *Mulhern, J.*) entered upon a jury verdict in favor of Mainely Media, LLC; Ben Meiklejohn; and Molly Lovell-Keely (collectively, Mainely Media) on the Gaudettes' claims of defamation, false light, and loss of consortium.  In their complaint, the Gaudettes alleged that Mainely Media had published false information indicating that Gaudette[1] had sexually abused minors decades earlier, while he was a police officer.  On appeal, the Gaudettes argue that, during the trial, the court abused its discretion by refusing to strike a detective's

---

[1] In this opinion, we use "Gaudette" in the singular to refer to Norman Gaudette.

2

testimony that his investigation of Gaudette in 1990 did not exonerate Gaudette because of "clear and convincing evidence that Mr. Gaudette was more likely than not a sexual predator." We conclude that, in the context of the trial, the court did not abuse its discretion in admitting the detective's testimony. Accordingly, we affirm the judgment.[2]

## I. BACKGROUND

[¶2] On June 24, 2015, the Gaudettes filed a complaint in the Superior Court alleging defamation and five other causes of action, including Gaudette's claim of false light and Joanne Gaudette's claim for loss of consortium, arising from the 2015 publication of news articles in the Biddeford-Saco-Old Orchard Beach Courier (the Courier) reporting accusations that Gaudette sexually abused multiple teenage boys in the late 1970s and in the 1980s while he was a Biddeford police officer. The complaint alleged that the articles had portrayed Gaudette "as a sexual predator who has evaded justice." Gaudette named as defendants Mainely Media, LLC, the publisher of the articles; Ben Meiklejohn, a

---

[2] Because we affirm the judgment, we do not reach Mainely Media's argument that the trial court erred in denying Mainely Media's motions for judgment as a matter of law. We do note that, although Mainely Media filed a notice of appeal, it did not have to cross-appeal to preserve its argument that the judgment in its favor should be affirmed on alternative grounds. *See* M.R. App. P. 2C(a)(1); M.R. App. P. 2C Restyling Notes – June 2017.

staff writer for the Courier in 2015; and Molly Lovell-Keely, a managing editor of the Courier in 2015.

[¶3]  Mainely Media filed a special motion to dismiss the suit pursuant to Maine's statute providing protection from strategic lawsuits against public participation, 14 M.R.S. § 556 (2023).  The court (*O'Neil, J.*) denied the motion, and we affirmed that decision in *Gaudette v. Mainely Media, LLC*, 2017 ME 87, 160 A.3d 539.  Mainely Media then moved for summary judgment.  The court granted the motion in part, leaving for trial Gaudette's claims of false light and defamation regarding the reported accusations of two men (L.O. and R.K.) and Joanne Gaudette's claim for loss of consortium.  The parties proceeded to a jury trial on these claims.

[¶4]  The court (*Mulhern, J.*) held a thirteen-day trial over the course of three weeks in March 2022.  The parties submitted several joint exhibits, including the two articles that generated Gaudette's defamation and false light claims.  Gaudette challenged information in the articles reporting that (1) L.O. claimed that Gaudette had sexually abused him when he was a teenager, including by raping him while he was passed out in a camper in Naples and (2) R.K. claimed that Gaudette had repeatedly had sexual contact with him beginning when he was fifteen years old, including by touching his genitals

4

while he was working for Gaudette cleaning banks after hours and by climbing on top of R.K. and putting his hands down R.K.'s pajama pants while R.K. was sleeping in a camper.

[¶5] The Gaudettes called R.K. as a witness in an effort to undermine his credibility and offered testimony suggesting that Gaudette had been "exonerated" or "cleared" because a grand jury had declined to indict him. When the Gaudettes rested their case after presenting voluminous evidence, Mainely Media moved for judgment as a matter of law. *See* M.R. Civ. P. 50(a). Viewing the evidence in the light most favorable to the Gaudettes, the court denied the motion.

[¶6] Mainely Media then presented documentary evidence and called several witnesses, including L.O., a third accuser who had spoken with Lovell-Keely, and Michael Pulire, the detective at the Maine Attorney General's Office who investigated multiple accusations against Gaudette in 1990. At the end of the direct examination of Pulire, the following exchange occurred:

> Q    Now, there's been some testimony that the Attorney General's investigation exonerated Norman Gaudette. Did your investigation into Norman Gaudette exonerate him?
>
> A    It did not.
>
> Q    Why not?

> A    There was clear and convincing evidence that Mr. Gaudette was more likely than not a sexual predator.

The Gaudettes objected and moved to strike Pulire's final response, citing Rule 403 of the Maine Rules of Evidence.[3]  The court noted, "Well, the term exonerated has been rolled out in front of the jury a number of times.  And this is the investigating detective, and he was asked his opinion on that, and he responded . . . ."  The court overruled the objection.

[¶7]  After presenting its evidence, Mainely Media again moved for judgment as a matter of law.  *See* M.R. Civ. P. 50(a).  The court denied the motion.  The parties presented closing arguments, and the court delivered jury instructions, including an instruction on the use of a special verdict form that the court provided to the jury.

[¶8]  The jury found that the Gaudettes had failed to prove defamation, false light, or loss of consortium.  In the special verdict form, the jury found that the Gaudettes had not proved, by a preponderance of the evidence, that any of the challenged statements made by L.O. or R.K. were false and defamatory, or that the published articles placed Gaudette in a false light that would be

---

[3]  Rule 403 of the Maine Rules of Evidence provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

6

offensive to a reasonable person.[4]  The jury thus did not have to make findings about whether the Gaudettes had proved, by clear and convincing evidence, that either Meilklejohn or Lovell-Keely published the statements with actual malice.[5]  The court entered a judgment for Mainely Media on April 1, 2022.  The Gaudettes timely appealed.  *See* 14 M.R.S. § 1851 (2023); M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶9]  The Gaudettes argue that the court abused its discretion in denying their motion to strike Pulire's testimony that his 1990 investigation did not exonerate Gaudette because "there was clear and convincing evidence that Mr. Gaudette was more likely than not a sexual predator."  The Gaudettes argue that the testimony lacked probative value and that allowing the use of terminology regarding standards of proof and the term "sexual predator" was highly prejudicial given that it was in the province of the *jury*—not the detective—to determine whether Gaudette or his accusers were credible.

---

[4]  *See Morgan v. Kooistra*, 2008 ME 26, ¶ 26, 941 A.2d 447 (listing the elements of a defamation claim); *Cole v. Chandler*, 2000 ME 104, ¶ 17, 752 A.2d 1189 (listing the elements of a false light claim).

[5]  *See Plante v. Long*, 2017 ME 189, ¶ 10, 170 A.3d 243 (holding that a statement about a public figure concerning a matter of public concern related to his official conduct is "subject to a conditional privilege . . . that can be overcome only by clear and convincing evidence of [actual malice, i.e.,] knowledge or disregard of falsity" (quotation marks omitted)).

[¶10]  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." M.R. Evid. 403. A trial court has broad discretion in weighing the probative value of relevant evidence against the danger of unfair prejudice.  *See State v. Kimball*, 2016 ME 75, ¶ 16, 139 A.3d 914.

[¶11]  "For purposes of Rule 403, prejudice means an undue tendency to move the fact finders to decide the issue on an improper basis." *State v. Hussein*, 2019 ME 74, ¶ 14, 208 A.3d 752 (quotation marks omitted).  Often, the improper basis is an emotional one.  *State v. Marquis*, 2017 ME 104, ¶ 29, 162 A.3d 818; *see State v. Hassan*, 2013 ME 98, ¶ 26, 82 A.3d 86 ("Prejudicial evidence is inherently inflammatory evidence that is likely to arouse the passion of the fact-finder.").

[¶12]  The determination of the probative value of evidence depends on the causes of action sought to be proved.  *See, e.g.*, *Freeman v. Funtown/Splashtown, USA*, 2003 ME 101, ¶¶ 7-11, 828 A.2d 752; *State v. Michaud*, 2017 ME 170, ¶ 10, 168 A.3d 802.  Here, the primary claim is for defamation, which ordinarily requires the plaintiff to prove the following elements by a preponderance of the evidence: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party;

8

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Morgan v. Kooistra*, 2008 ME 26, ¶ 26, 941 A.2d 447 (quotation marks omitted); *see Hudson v. Guy Gannett Broad. Co.*, 521 A.2d 714, 715-16 (Me. 1987). Due to the First Amendment of the United States Constitution, when a published statement discusses a public figure's official conduct regarding a matter of public concern—a type of discussion that "deserves special favor in a democratic society"—the statement is "subject to a conditional privilege . . . that can be overcome only by clear and convincing evidence of [actual malice, i.e.,] knowledge or disregard of falsity."[6] *Plante v. Long*, 2017 ME 189, ¶ 10, 170 A.3d 243 (quotation marks omitted); *see N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).

[¶13] Gaudette's other claim—for false light—requires similar proof: "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of

---

[6] Although the jury here found that the Gaudettes had not proved the ordinary elements of defamation by a preponderance of the evidence and therefore never reached the question of whether either of the individual defendants acted with actual malice, evidence of actual malice was relevant and probative at the time of trial. *See* M.R. Evid. 401 ("Evidence is relevant if: **(a)** It has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** The fact is of consequence in determining the action.").

his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Cole v. Chandler*, 2000 ME 104, ¶ 17, 752 A.2d 1189 (quotation marks omitted). Joanne Gaudette's claim for loss of consortium is a derivative claim that depended on Gaudette's success on one or both of his underlying claims. *See Brown v. Crown Equip. Corp.*, 2008 ME 186, ¶ 23, 960 A.2d 1188. Thus, due to the causes of action at issue, evidence was relevant and had probative value if it made it more or less probable that the challenged articles were published with knowledge that they contained false information or in negligent or reckless disregard of whether they contained false information. *See Morgan*, 2008 ME 26, ¶ 26, 941 A.2d 447; *Plante*, 2017 ME 189, ¶ 10, 170 A.3d 243; *Cole*, 2000 ME 104, ¶ 17, 752 A.2d 1189; M.R. Evid. 401, 403.

[¶14] The Gaudettes argue that the court should have stricken Pulire's testimony using the term "sexual predator" when describing the results of his investigation under M.R. Evid. 403. *Cf. Needham v. Needham*, 2022 ME 7, ¶ 20 n.6, 267 A.3d 1112 ("Allegations of sexual abuse of children are highly

inflammatory.").[7]   When emotionally charged language *is not* significantly probative of any conduct at issue, the danger of unfair prejudice may be too high for the court to admit it.  *See, e.g.*, *State v. Thongsavanh*, 2004 ME 126, ¶¶ 3, 8-10, 861 A.2d 39 (holding that the trial court abused its discretion in admitting evidence that the defendant, charged with murder, wore a shirt bearing "the highly inflammatory phrase 'Jesus is a cunt'"); *State v. Flood*, 408 A.2d 1295, 1297-99 (Me. 1979) (disapproving of the admission of a police officer's statement to the defendant that her companions were "druggies" in a criminal trial on charges of assaulting police officers).

[¶15]   This is not, however, a situation in which the term "sexual predator" was only minimally related to the issues being tried; the Gaudettes used the term in their complaint, alleging that Mainely Media had falsely depicted Gaudette as a "sexual predator" in the challenged articles.  Thus, in addition to being probative of whether Pulire's investigation exonerated Gaudette, the challenged testimony was probative of whether the reporters acted in negligent or reckless disregard of the falsity of the allegations that

---

[7]  In *Needham v. Needham*, we did not apply Rule 403 but identified the inflammatory nature of hearsay indicating that the Department of Health and Human Services had "substantiated" the father for sexual abuse of a child and held that the admission of that hearsay was prejudicial.  2022 ME 7, ¶¶ 3-7, 15-20 & n.6, 267 A.3d 1112.

Gaudette had groomed minors for sexual abuse and had committed sexual acts against them. *See Morgan*, 2008 ME 26, ¶ 26, 941 A.2d 447; *Plante*, 2017 ME 189, ¶ 10, 170 A.3d 243; *Cole*, 2000 ME 104, ¶ 17, 752 A.2d 1189; M.R. Evid. 401, 403. In the unique circumstances of this case, the court could properly determine, in its broad discretion, that the probative value of Pulire's testimony about the result of his investigation was not substantially outweighed by the danger of unfair prejudice arising from the use of the generally inflammatory term "sexual predator." *See* M.R. Evid. 403; *cf. Needham*, 2022 ME 7, ¶ 20 n.6, 267 A.3d 1112.

[¶16] As to Pulire's references to "clear and convincing evidence" and the standard of "more likely than not," although these phrases could suggest that Pulire was conveying a formal evidentiary finding reached by the grand jury or some other entity, we defer to the broad discretion of the trial judge in deciding to admit the testimony, understanding that Pulire was subject to cross-examination to clarify the meaning of his testimony. *See Kimball*, 2016 ME 75, ¶ 16, 139 A.3d 914. Indeed, following the direct examination of Pulire, the Gaudettes cross-examined Pulire at length about the extent to which he recalled details of the decades-old investigation.

12

[¶17] Finally, although "[o]ne witness's opinion of another witness's truthfulness is not helpful to the jury when the jury has the opportunity to hear both witnesses," *State v. Sweeney*, 2004 ME 123, ¶ 11, 861 A.2d 43, Pulire's testimony explained the results of a full investigation and was not a comment on the credibility or truthfulness of L.O., R.K., or any of the defendants. Thus, his testimony that the Attorney General's investigation did not exonerate Gaudette, but rather revealed evidence of Gaudette's misconduct, was highly probative of issues raised in the case. Specifically, the evidence had significant probative value in (1) rebutting other testimony suggesting that Gaudette had been "exonerated" or "cleared," and (2) supporting the position that Meiklejohn and Lovell-Keely did not act in negligent or reckless disregard of the truth in reporting the accusations against Gaudette.

[¶18] We conclude that, given the particular factual questions before the jury in the context of this lengthy trial on a complaint that included allegations of defamation and false light, the court did not abuse its broad discretion in admitting Pulire's testimony. Accordingly, we affirm the judgment in favor of Mainely Media.

The entry is:

Judgment affirmed.

_____

JABAR, J., concurring.

[¶19]  I concur in this opinion, but I write separately because I believe that the trial court erred by not sustaining Gaudette's objection and striking Detective Pulire's testimony using the term "sexual predator" to describe the results of his investigation.  However, because I believe the error was harmless, I join in affirming the jury's decision.

## I.  RULE 403

[¶20]  Rule 403 of the Maine Rules of Evidence provides that the court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  M.R. Evid. 403.  Rule 403 "does not protect a party from all prejudice, but only serves as a guard against *unfair* prejudice."  *State v. Lipham*, 2006 ME 137, ¶ 9, 910 A.2d 388.  "Prejudice, in this context, means an undue tendency to move the fact finders to decide the issue on an improper basis, commonly, although not invariably, an emotional one."

14

*State v. Dean*, 589 A.2d 929, 934 (Me. 1991) (quotations marks omitted); *see also State v. Renfro*, 2017 ME 49, ¶ 9, 157 A.3d 775.  Evidence may be both relevant and "of minimal value."  *Kaechele v. Kenyon Oil Co.*, 2000 ME 39, ¶ 6, 747 A.2d 167.  Because of this tension, "[t]he court's decision regarding the admissibility of relevant evidence . . . 'blends imperceptibly into its discretion under Rule 403'" and we review this decision for abuse of discretion.  *Id.* (quoting Field & Murray, *Maine Evidence* § 401.1 at 98 (6th ed. 2007)).  This decision "involves the weighing of probative value against considerations militating against admissibility."  *Rich v. Fuller*, 666 A.2d 71, 73 (Me. 1995).

[¶21]  Here, it is necessary to properly contextualize Pulire's testimony. Gaudette objected to Pulire's testimony only on Rule 403 grounds and did not object on relevancy or foundational grounds, and therefore may have waived any objection on relevancy and foundational grounds.[8]  However, because Gaudette objected to the statement's admission as to Rule 403, it was still

---

[8]  Pulire's testimony was an opinion on the truthfulness of the victims' testimony and should not have been admitted in the first place.  *See State v. Sweeney*, 2004 ME 123, ¶ 11, 861 A.2d 43.  The Court's opinion acknowledges that "[o]ne witness's opinion of another witness's truthfulness is not helpful to the jury when the jury has the opportunity to hear both witnesses."  *Id.*; Court's Opinion ¶ 17.  Mainely Media's closing argument was a clear attempt to present Pulire's testimony to support the testimony of the two victims in this case.

necessary to balance the probative value with the prejudice.[9]   *See* M.R. Evid. 403.

[¶22]  The Court's opinion concludes that the trial court did not abuse its discretion in admitting the challenged testimony because the term "sexual predator" was related to the issue being tried, raising the probative value of the testimony so it was not substantially outweighed by unfair prejudice to Gaudette.  Court's Opinion ¶¶ 15, 18.  However, the fact that the testimony is related to the issues being tried is exactly why the testimony should have been excluded as unfairly prejudicial.

[¶23]  One of the primary issues before the jury was whether statements about Gaudette's conduct toward the two victims were false.  Questions one and three of the verdict form asked the jurors whether Gaudette proved that one or more of the allegations of sexual abuse by witnesses L.O. and R.K. were false and defamatory.  The jury was presented with Gaudette's claim that he never sexually assaulted either R.K. or L.O. versus the testimony of the two victims who claimed that he sexually assaulted them.  Mainely Media, in its closing

---

[9] I wish to distinguish the present case from a hypothetical situation where Pulire had directly told Mainely Media before the publication at issue that he believed his investigation had not exonerated Gaudette because there was evidence of Gaudette being a sexual predator. The probative value of that statement in that factual scenario would have outweighed the unfair prejudice of the phrase "sexual predator" because it would have gone to Mainely Media's state of mind before the article published.

argument, improperly used Pulire's testimony regarding his investigation to vouch for the credibility of the two victims and argue that Gaudette was "guilty":

> Det. Michael Pulire, never would he have talked to them. That was amazing and an honor that we actually got to hear from him, the AG lead detective, who's been doing it for 30 years.
>
> . . . .
>
> But you all go back to the jury form. If you believe that there is ambiguity in the evidence or if you believe he's guilty, as Michael Pulire stated, then your job is going to be pretty easy.

[¶24] Mainely Media's closing argument emphasized the testimony of Pulire as evidence of Gaudette's guilt. The unfair prejudice of an inflammatory statement that goes to the heart of this issue by a respected Attorney General's office detective of thirty years is far greater than the probative value of Pulire's testimony.

[¶25] The phrase "sexual predator" is highly inflammatory and caused unfair prejudice because it could have moved the jurors on an improper, emotional basis. *See Needham v. Needham*, 2022 ME 7, ¶ 20 n.6, 267 A.3d 1112 ("Allegations of sexual abuse of children are highly inflammatory."); *Dean*, 589 A.2d at 934. Although the rebuttal of Gaudette's claim that the investigation exonerated him offers some probative value, this probative value

is substantially outweighed by the unfair prejudice of the inflammatory statement. Mainely Media's own closing argument demonstrates the harm of the statement; Mainely Media's attorney told the jury, "[I]f you believe [Gaudette] is guilty, as Michael Pulire stated, then your job is going to be pretty easy." Because the unfair prejudice substantially outweighed the probative value of Pulire's testimony that there was "clear and convincing evidence" that Gaudette was a sexual predator, I believe it was error for the trial court to overrule Gaudette's objection and not give a curative instruction telling the jury to disregard the statement.

## II. HARMLESS ERROR

[¶26] We must, however, consider whether the error was harmless in the context of all of the other evidence offered at the lengthy trial. "No error in either the admission or the exclusion of evidence . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." M.R. Civ. P. 61. "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." *Id.* "A preserved error is harmless if it is highly probable that the error did not affect

the judgment." *Mulready v. Bd. of Real Estate Appraisers*, 2009 ME 135, ¶ 20, 984 A.2d 1285 (quotation marks omitted).

[¶27] Gaudette challenges the admission of one statement in the context of a lengthy trial, and we must consider that context in determining whether the error in admitting the reference to Gaudette as a "sexual predator" was harmless. Pulire made the challenged statement at the end of his testimony to explain why he did not consider Gaudette to have been "exonerated" by Pulire's investigation. Although the Gaudettes contend that the statement carried great weight because it came at the end of the trial, the Gaudettes cross-examined Pulire at length immediately after the challenged testimony, and another witness testified after him. Most significantly, though, during twelve days of testimony, the jury heard from multiple other witnesses that Gaudette had abused children by grooming them for abuse and escalating his conduct toward them over time. We summarize this testimony to illustrate the context in which the challenged testimony was admitted.

[¶28] R.K. provided detailed testimony about Gaudette offering him a job at his cleaning company and giving him gifts when he was about fourteen years old. He testified that, while working together cleaning commercial buildings after hours, Gaudette engaged in unlawful sexual contact with R.K. He testified

about an occasion when Gaudette brought him to a camper in Naples, where R.K. drank heavily and awoke to find Gaudette engaging in unlawful sexual contact with him, at which time he grabbed Gaudette's gun and aimed it at Gaudette to stop him. R.K. further testified that Gaudette invited him to participate in a pornography sting, which R.K. declined to do once he learned that it would require him to participate in filmed sex acts with Gaudette. According to R.K.'s testimony, Gaudette tried to normalize the behavior by reassuring R.K. that their interactions were how people showed love for each other and by saying that there was nothing wrong with his conduct.

[¶29] L.O. similarly testified that Gaudette offered him a job at his cleaning company when he was about fifteen years old and bought him gifts and clothing and helped him financially. He testified to one incident where Gaudette engaged in unlawful sexual contact with him while in the back room on a job site and tried to "wrestle" with him; another incident where Gaudette cornered L.O. in a bathroom at a job site and forcibly engaged in an unlawful sexual act with him; and that Gaudette brought him camping, where he furnished alcohol and sexually assaulted L.O. after he passed out, which L.O. realized because, when he awoke, he was sore and his underwear was soiled, including with blood. L.O. testified that Gaudette engaged in sexual acts with

L.O. on multiple other occasions and gave L.O. fifty dollars after each occurrence.

[¶30] Another witness testified that he had told Lovell-Keely that at age sixteen he went to a hotel to get drugs and alcohol and was filmed there engaging in sexual acts with others, including another boy who was sixteen years old and Gaudette. He testified that Gaudette threatened to make his and his family's lives "a living hell" if he ever mentioned what happened.

[¶31] Meiklejohn testified that R.K. and L.O. told him and Lovell-Keely directly that Gaudette had groomed and abused them. He further testified that he received information indicating that Gaudette had made advances toward Gaudette's teenage nephew, which his nephew had rejected, and that Gaudette had invited his nephew to participate in a child pornography sting that would require him to participate in sex acts. Meiklejohn testified that he also spoke with individuals who had seen Gaudette bring R.K. camping alone, had seen Gaudette pick L.O. up to take him to work, and had heard from Gaudette's nephew and the nephew's relatives about Gaudette's advances on his nephew. Meiklejohn testified that he received reports of other boys being either abused by Gaudette or invited to participate in a pornography sting. He testified that Gaudette, when asked about these things, did not deny the allegations.

[¶32] Lovell-Keely testified that she received a report from L.O., who had not known R.K., that Gaudette had groomed L.O. for abuse by hiring him to clean buildings and giving him gifts, then assaulted him while camping and repeatedly coerced sexual contact thereafter. She learned from sources that three others had given statements during the investigation of Gaudette in 1990 that he had sexually assaulted them as teenagers and had given money for oral-genital contact. She also testified that when she approached Gaudette at his home to get a comment, he denied that he was Norman Gaudette.

[¶33] Biddeford police officers testified that both L.O. and R.K. had reported Gaudette subjecting them to sexual contact when each of them camped alone with Gaudette, consistent with the testimony that they provided at trial and the content of the published articles. Finally, before Pulire made the challenged statement, he testified that he had spoken to five accusers, including two of the three who testified at trial, when investigating Gaudette, and that his report on Gaudette had provided everything that Biddeford's police chief would need to discharge him from duty.

[¶34] As this summary of the testimony demonstrates, there was extensive evidence supporting the jury's findings, reported in the special verdict form, that Gaudette had not proved the falsity of the published

statements that Gaudette (1) abused L.O. when he was in his teens during a camping trip, and (2) abused R.K. beginning when he was fifteen years old, while R.K. was working for him. The same evidence also supports the jury's findings that neither article placed Gaudette before the public in a false light. Given these findings, no loss of consortium claim was viable. *See Brown v. Crown Equip. Corp.*, 2008 ME 186, ¶ 23, 960 A.2d 1188.

[¶35] Given the extent of the evidence supporting the jury's findings, and the paucity of evidence—independent of Gaudette's and his family members' testimony—to suggest that the accusations against Gaudette were false, it is highly probable that the error in refusing to strike Pulire's single statement, which Pulire delivered only to explain why he did not consider Gaudette to have been "exonerated" through Pulire's investigation, did not affect the verdict.

[¶36] In conclusion, although I believe that the trial court erred when it did not strike Pulire's testimony, the error was harmless, and I concur in affirming the jury's decision.

Gene R. Libby, Esq. (orally), and Tyler J. Smith, Esq., Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellants Norman Gaudette and Joanne Gaudette

Jonathan W. Brogan, Esq., and Trevor D. Savage, Esq., Norman, Hanson & DeTroy, LLC, Portland, and Cynthia Counts, Esq. (orally), FisherBroyles LLP, Atlanta, Georgia, for appellees Mainely Media, LLC, Ben Meiklejohn, and Molly Lovell-Keely

York County Superior Court docket number CV-2015-123
FOR CLERK REFERENCE ONLY